(November 1, 1911.)

## THE COUNTY OF ADA, Respondent, v. BOISE COMMERCIAL CLUB, a Corporation, Appellant.

### [118 Pac. 1086.]

INTOXICATING LIQUORS—SALE—LICENSE—SOCIAL CLUBS—ENFORCEMENT OF LAW.

### (Syllabus by the court.)

1. Under the provisions of Rev. Codes, sec. 15, "words and phrases are construed according to the context and the approved usage of the language."

2. Rev. Codes, sec. 16, provides: "The word 'person' includes a corporation as well as a natural person."

3. The word "person" as used in Rev. Codes, sec. 1506, includes corporations of all character and kinds, whether organized as such for profit or social advantages without profit.

4. Where a social club, organized as a corporation under the general laws of the state governing social and religious corporations, keeps intoxicating liquors at the clubrooms and delivers to members such quantity of liquor as the member may request, for which the member pays in cash or gives a card to have the same charged to his account, and thereafter pays such account, and pays or agrees to pay the price fixed by the club, the liquor being purchased to be drank upon the premises, and such liquor being kept and sold as a mere incident to the general objects and purposes of the club, such club is subject to the provisions of Rev. Codes, sec. 1506, and is required to procure a license.

5. The word "sell" as used in sec. 1506 of the Rev. Codes has its ordinary and common meaning and was intended by the legislature to mean the transfer of title to intoxicating liquor by valid agreement, from one party to another, for some consideration.

6. Where a commercial club is organized as a corporation organized "to advance by social intercourse and friendly exchange of views, the commercial prosperity and growth of Boise City and the state of Idaho; to encourage the establishment of manufactories and other industries; seek remunerative markets for home products; foster capital and protect labor, mutually interested in each other's welfare; collect and disseminate valuable agricultural, manufacturing and commercial information; extend and develop trade, agriculture, merchandise, banking, mining, smelting, livestock and wool-growing

pursuits, and to do any and all things necessary to promote the growth and development of Boise, and the state of Idaho," and such club, by its rules and by-laws, maintains a stock of intoxicating liquors sufficient to fulfil the wants of its members and their guests, purchased by the club at wholesale prices, and supplied to the members and their guests exclusively, without pecuniary profit to the club, in small quantities or in individual drinks, to be consumed by such members and their guests within the clubrooms, merely as incidental to the main objects and purposes of the club, such distribution of liquors by such club is a sale within the meaning of the provisions of Rev. Codes, sec. 1506.

7. Where a social club is organized as a corporation and keeps in stock intoxicating liquors for disposition to its members and their guests for a consideration, as incidental to the main objects and purposes of the club, the ownership and the property interest to such liquor is in the club and not in its members, until after the members have purchased such liquor for their own use.

8. It is an elementary principle that the neglect or failure of public officers to do and perform their duty as required by law will not estop the public or prevent any rights or acts of the state in enforcing its laws, and the failure of public officials to collect a revenue license, where such is required by law, for a number of years, is not sufficient evidence of the intent of the legislature in passing such law to exclude from its operation persons and corporations from whom such officers have failed to collect such revenue license.

APPEAL from the District Court of the First Judicial District for Shoshone County. Hon. W. W. Woods, Judge.

An action to collect a license under the provisions of Rev. Codes, sec. 1506. Judgment for plaintiff. Defendant appeals. *Affirmed.*

R. H. Johnson, Lynne F. Clinton, and Chas. M. Kahn, for Appellant.

The legislature never intended to have sec. 1506 or any of the so-called liquor statutes apply to such institutions as the Boise Commercial Club prior to the local option law of 1909. (*Cuzner v. California Club,* 155 Cal. 303, 100 Pac. 868, 20 L. R. A., N. S., 1095; *Klein v. Livingston Club,* 177 Pa. 224, 55 Am. St. 717, 35 Atl. 606, 34 L. R. A. 94.)

"If the club is organized and conducted in good faith with a limited and selected membership, really owning its property in common and formed for literary, social, artistic, or other purposes to which the furnishing of liquor to its members would be merely incidental, then it cannot be considered as within either the purview or letter of the law." (Black on Intoxicating Liquors, sec. 142.)

Where the furnishing of intoxicating liquors is without profit to the club and merely incidental to the main purpose of its organization, such furnishing will not constitute a sale within the meaning of statutes prohibiting sales without a license. (17 Am. & Eng. Ency. of Law, 361; 23 Cyc. 117; *Graff v. Evans*, L. R. 8 Q. B. Div. 373; *Commonwealth v. Smith*, 102 Mass. 144; *Com. v. Pompherte*, 137 Mass. 564, 50 Am. Rep. 340.)

An express statutory enactment of the legislature is necessary to bring the Boise Commercial Club under the provisions of sec. 1506. (*Commonwealth v. Ewig*, 145 Mass. 119, 13 N. E. 365; *Commonwealth v. Geary*, 146 Mass. 139, 15 N. E. 363.)

"The fact that a payment was made does not change the character of the act, for it was but the means adopted by which each member could receive his own and not that belonging to his fellow-member." (*People v. Adelphi Club*, 149 N. Y. 5, 52 Am. St. 700, 43 N. E. 410, 31 L. R. A. 510; *State ex rel. Bell v. St. Louis Club*, 125 Mo. 308, 28 S. W. 604, 26 L. R. A. 573; *Seim v. State*, 55 Md. 566, 39 Am. Rep. 419; *Piedmont Club v. Commonwealth*, 87 Va. 541, 12 S. E. 563; *State v. McMasters*, 35 S. C. 1, 28 Am. St. 826, 14 S. E. 290; *Manassas Club v. Mobile*, 121 Ala. 561, 25 So. 628; *State v. Austin Club*, 89 Tex. 20, 30 L. R. A. 500, 33 S. W. 113; *Koenig v. State*, 33 Tex. Cr. 367, 47 Am. St. 35, 26 S. W. 835; *Tennessee Club v. Dwyer*, 11 Lea (Tenn.), 452, 47 Am. Rep. 298; *Barden v. Montana Club*, 10 Mont. 330, 24 Am. St. 27, 25 Pac. 1042, 11 L. R. A. 593; *State v. Boston Club*, 45 La. Ann. 585, 12 So. 895, 20 L. R. A. 185; *State v. Moriarity* (Tenn.), 124 S. W. 1016, 25 L. R. A., N. S., 1252.)

C. P. McCarthy, B. S. Crow, and Raymond L. Givens, for Respondent.

The property in the liquor is transferred from one person to another, from an artificial person, a corporation, to an individual; a price is paid by the one receiving the liquor, and after the liquor is so transferred, the one receiving it owns it absolutely, while before the transaction the corporation owned it absolutely.

The same rule applies to an unincorporated club or association. (*South Shore Country Club v. People*, 228 Ill. 75, 119[ll] . Am. St. 417, 81 N. E. 805, 12 L. R. A., N. S., 519, 10 Ann. Cas. 383; 25 Am. & Eng. Ency. of Law, 2d ed., 1135; *Manning v. Canyon City*, 45 Colo. 571, 101 Pac. 981, 23 L. R. A., N. S., 192; *U. S. v. Alexis Club*, 98 Fed. 725; *City of Spokane v. Baughman*, 54 Wash. 315, 103 Pac. 14; *State v. Minnesota Club*, 106 Minn. 515, 119 N. W. 498, 20 L. R. A., N. S., 1101; *People v. Soule*, 74 Mich. 250, 41 N. W. 908, 2 L. R. A. 494; *State v. Essex Club*, 53 N. J. L. 99, 20 Atl. 771; *State v. Easton Club*, 73 Md. 97, 20 Atl. 784, 10 L. R. A. 64; *State v. Mudie*, 22 S. D. 41, 115 N. W. 107; *Martin v. State*, 59 Ala. 34; *Beauvoir Club v. State*, 148 Ala. 643, 121 Am. St. 82, 42 So. 1040; *Marmont v. State*, 48 Ind. 21; *State v. Mercer*, 32 Iowa, 405; *State v. Lockyear*, 95 N. C. 633, 59 Am. Rep. 287; *State v. Horacek*, 41 Kan. 87, 21 Pac. 204, 3 L. R. A. 687; *Kranavek v. State*, 38 Tex. Cr. 44, 41 S. W. 612; *State v. Neis*, 108 N. C. 787, 12 L. R. A. 412, 13 S. E. 225; *Mohrman v. State*, 105 Ga. 709, 70 Am. St. 74, 43 L. R. A. 398, 32 S. E. 143; *State v. Boston Club*, 45 La. Ann. 585, 12 So. 895, 20 L. R. A. 185.)

The laches of a public officer in the performance of his official duties cannot estop the public or waive any of the governmental rights of the government by which such officer is employed. (19 Cent. Dig., c. 2109, sec. 151; *Spokane v. Baughman*, 54 Wash. 315, 103 Pac. 14.)

STEWART, C. J.—This case is submitted on an agreed statement of fact, to wit:

"1. The defendant Boise Commercial Club is now and ever since the month of February, 1906, has been a corporation organized under Chapter VIII, Title 4, of the Civil Code of the Revised Statutes of 1887, relating to religious, social and benevolent corporations, and has no capital stock and is not conducted for pecuniary profit.

"2. That the purposes for which the defendant is organized are 'to advance, by social intercourse and friendly exchange of views, the commercial prosperity and growth of Boise City and the state of Idaho; to encourage the establishment of manufactories and other industries; seek remunerative markets for home products; foster capital and protect labor, mutually interested in each other's welfare; collect and disseminate valuable agricultural, manufacturing and commercial information; extend and develop trade, agriculture, merchandising, banking, mining, smelting, livestock and wool-growing pursuits, and to do any and all things necessary to promote the growth and development of Boise and the state of Idaho.'

"3. That the principal place of business of the defendant is in the city of Boise, county of Ada, state of Idaho, and it maintains in that city clubrooms for the exclusive use of its members and their guests, and such rooms are provided with the conveniences and comforts usually found in social clubs, such as a library, reading and writing rooms, parlor, billiard and card rooms, kitchen and dining-rooms, where meals are furnished members, and a buffet, and also rooms for the officers and directors, all of which are adequately furnished.

"That the amount invested by defendant in the property of the club, exclusive of the lease on its clubrooms, exceeds the sum of seven thousand dollars.

"4. That the membership of the club consists of over 250 resident and over seventy-five nonresident members, who pay an initiation fee and dues for the privilege of belonging to the club, and all such fees and dues and all receipts of said club are applied for the sole purpose of carrying out the objects for which the club was formed as set forth above."

(Then follow certain rules and by-laws of the club regulating the admission and introduction of visitors who are not

members of the club, none of which bears upon the question in controversy in this case.)

"5. That ever since the organization of this club it has maintained in connection with its said buffet, a stock of vinous, spirituous and malt liquors and cigars in quantities sufficient to fulfil the wants of its members and their guests.

"That these liquors and cigars are purchased by the club at wholesale prices and supplied to members and their guests exclusively without pecuniary profit to the club, in small quantities or individual drinks, to be consumed by such member and guest within the clubrooms. That the amount paid by such member for such drink is in excess of its original cost to the club, but the amount of this charge is regulated to cover the actual cost to the club of the liquor and cigars and expenses of serving the same and conducting the buffet. On being served, the member signs a card which is thereafter filed by the servant of the club in the office of the secretary and is paid by the member before leaving the clubroom or charged to his account. That the furnishing of such liquors and cigars, as aforesaid, is merely incidental to the main objects and purposes of the club as above set forth.

"6. That since its organization defendant has not paid any retail liquor license to Ada' county or the state of Idaho, and has never been called upon so to do by any state or county authorities until within a short time prior to the submission of this agreed case. That at no time prior to such request for defendant to take out a license as retail liquor dealer had any such request or demand ever been made on any *bona fide* social club or corporation organized under said law by the authorities of Ada county or other counties throughout the state of Idaho, although numerous organizations of that character had been in existence and in operation in said Ada county and other parts of said state for more than fifteen years and had supplied their members with spirituous, malt and vinous liquors, in manner similar to that adopted by defendant."

The district judge of the third judicial district being a member of the club, and deeming himself disqualified, the

cause was transferred to the district court of the first judicial district in and for Shoshone county, and upon the foregoing facts and stipulation there was submitted the following question: "Is the defendant on the foregoing facts required to procure the liquor dealer's license provided for in secs. 1506–1510 of the Rev. Codes of Idaho?" to which question the district court answered "Yes," and upon this answer rendered a judgment in favor of the plaintiff and ordered that if the defendant continues to dispense liquors of any kind, ale or beer or any malt beverage, that it procure the liquor dealer's license provided for in secs. 1506–1510 of the Rev. Codes. From that judgment this appeal is taken.

This appeal involves the construction and application of sec. 1506, Rev. Codes. This section reads as follows:

"It shall be unlawful for any person, by himself, by agent, or otherwise, to sell spirituous, malt or fermented liquors or wines, to be drank in, on or about the premises where sold, without having first procured a license and given a bond. . . . "

This section became the law of this state on the 1st day of July, 1891. Counsel for appellant makes two different contentions against the application of this statute to the facts of this case. First, that it was not the intention of the legislature to make the word "person," as used in sec. 1506, include clubs of the kind and character described in the agreed statement of facts. We think the statutes of this state answer this objection. Sec. 15 of the Rev. Codes provides: "Words and phrases are construed according to the context and the approved usage of the language, but technical words and phrases, and such others as have acquired a peculiar and appropriate meaning in law, or are defined in the succeeding section, are to be construed according to such peculiar and appropriate meaning or definition"; and sec. 16, Rev. Codes, among other things provides: "The word 'person' includes a corporation as well as a natural person." This latter section of the statute became a law while Idaho was still a territory, and has been continued as a part of the laws of Idaho since its statehood, and the definition of the word "person"

has never been changed or altered or questioned by the legislature in any subsequent legislation, and the definition given in the statute has been accepted as the true and correct definition, and such has been the usage of the term "person" since the adoption of such statute; and in construing the same, we are admonished by sec. 15, *supra,* that words and phrases are construed according to the context and the approved usage of the language, and we think that the accepted usage of the term "person" has been and is that it includes a corporation as well as a natural person.

It is, however, urged by counsel for appellant that inasmuch as the legislature fails to include the term "incorporated club" in the provisions of sec. 1506, that therefore the legislature did not intend to include such club within the provisions of said section. It was unnecessary to classify the character or kinds of corporations which would be required to secure a license to sell intoxicating liquors to be drank on the premises, unless the legislature had in mind the exclusion of a particular kind or character of corporation from the operation of the statute, because it had previously been enacted and had long been a law when sec. 1506 was enacted, that the word "person" included all corporations, and we think the conclusion is inevitable that if the legislature intended to exclude any particular kind of corporation they would have so declared in the section. Therefore, when the legislature said "any person," they intended that the word should mean the same as defined by the code, and should include corporations, and if so, if clubs are corporations, the word "person" includes such corporations. Counsel further argues that inasmuch as clubs of the character of the appellant have come into being within the state during the last ten years, and during such time the legislature has amended the liquor laws of the state, and had knowledge that clubs were in existence, and made no change in the statute by including clubs within the terms of sec. 1506, that therefore it was not intended by the legislature that the section should apply to such clubs. In answer to this we say that the legislature had already provided that the word "person" included corporations, and if

clubs are corporations, they come within the meaning of the word "person"; therefore there was no necessity to make any changes in the statute by inserting "clubs" as one of the kinds of corporations intended to be covered by the statute. If the various legislatures of the state had entertained any thought that the word "person" did not mean what the statute said it meant, they no doubt would have amended sec. 1506 long ago and excluded incorporated clubs engaged in the sale of intoxicating liquors as an incident to the general business of the club from the operation of that section of the statute. It was no doubt the purpose of this statute to provide a revenue from the sale of intoxicating liquors, and the legislature could not have intended that one person or one class of persons should have the privilege of selling intoxicating liquors to be drank on the premises where sold, without a license, while others would be required to pay a license. So we think it is perfectly apparent that the word "person," as used in sec. 16, *supra,* includes corporations, and that the legislature which enacted the law so intended, and that every legislature convening within the state since has so construed the statute, and for that reason has made no alteration or amendment thereof.

The second question urged upon this appeal is: Are the transactions with reference to the distribution of intoxicating liquors, as set out in the agreed statement of facts, sales? It must be conceded at the inception of a discussion of this question that the courts are very much divided. This conflict of views has arisen out of two different causes, the first the language used in the statutes of the various states requiring a license; second, an apparent notion that there are good clubs and bad clubs, and that the clubs which are good and are not exclusively engaged in the business of selling intoxicating liquors are, or ought to be, exempt from the statute requiring a license, while all other clubs must procure a license. Under the facts in this case the Boise Commercial Club is a corporation organized as a club, and it is agreed:

"That ever since the organization of this club it has maintained in connection with its buffet, a stock of vinous, spiritu-

ous and malt liquors and cigars in quantities sufficient to fulfil the wants of its members and their guests.

"That these liquors and cigars are purchased by the club at wholesale prices and supplied to members and their guests exclusively without pecuniary profit to the club, in small quantities or individual drinks, to be consumed by such member and guest within the clubrooms. That the amount paid by such member for such drink is in excess of its original cost to the club, but the amount of this charge is regulated to cover the actual cost to the club of the liquor and cigars and expense of serving the same and conducting the buffet. On being served, the member signs a card which is thereafter filed by the servant of the club in the office of the secretary and is paid by the member before leaving the clubroom or charged to his account."

While it is true the furnishing of such liquors is merely incidental to the main objects and purposes of the club, still that fact in no way lessens the transaction. The club purchases and keeps in stock the liquors, and furnishes the same to the members and their guests and a charge is made therefor, in excess of the cost of such liquor to the club. It thus appears from this statement that the liquors are the property of the club. (*State v. Minnesota Club,* 106 Minn. 515, 119 N. W. 498, 20 L. R. A., N. S., 1101; *City of Spokane v. Baughman,* 54 Wash. 315, 103 Pac. 14; *U. S. v. Alexis Club,* 98 Fed. 725; *South Shore Country Club v. People,* 228 Ill. 75, 119 Am. St. 417, 81 N. E. 805, 12 L. R. A., N. S., 519, 10 Ann. Cas. 383; *Manning v. Canyon City,* 45 Colo. 571, 101 Pac. 978, 23 L. R. A., N. S., 192.) The club being a corporation, under our statute the stockholders and members thereof bear the same relation to the club as stockholders in any general corporation organized under the statute, and the property purchased by the club and dispensed to its members is a disposition on the part of the club, to the members, of such property, and the members secure the possession of the liquor by paying to the club a certain price. An examination of this statute discloses the fact that the "person" making the sale is not limited to a person engaged in the business of sell-

ing liquor, or a person engaged in conducting a saloon or a disorderly place of business, or that the selling of liquor shall be the principal business conducted, and not a mere incident to aid the principal business, but does require that *all* persons who sell, whether the sale be an incident of, or the principal business, or be made at a profit or a loss, shall procure a license before the sale is made.

Had the legislature intended to make any exception of the extent of the sale or the manner of the sale, or the place where the liquor is sold, or whether the sale was at a profit, or was made simply to aid a general business carried on, it no doubt would have made some provision in the statute for such exception.   The fact that the sales made by the club are merely incidents of the general purposes and objects of the club, and are not made for profit, does not relieve the club from the obligations of the statute, because if that were true, then there is no reason why a grocery store, or a dry-goods store, or a blacksmith-shop might not keep a stock of liquor on hand and sell the same as a mere incident to the business carried on by such person, and as a means of inducement to persons to patronize the particular place.   So might the entire populace organize itself into various corporations or organizations or clubs for the purpose of carrying on or promoting some particular business or enterprise, and as an incident to the main business, keep a stock of intoxicating liquors on hand and furnish the same to the members or patrons, even at a loss, and thereby increase their patronage so that the increase in trade would be the profit, and thus the statute be entirely evaded.   It is no doubt true that when the Commercial Club was organized it attached as a part of the business of the club the sale and disposition of intoxicating liquors as an inducement to persons to become members of the club, in order that they might have the accommodations furnished at the bar of the club, and the club may have benefited and profited by the fact that its membership was increased by reason of this special inducement, although the direct profits of the sale of the liquor was a matter of little consequence and of little profit.   Sec. 1506 of the statute, however, makes no such

exception, and there is no other provision of the statute which seems to make any such exception.

But it is contended that there was no sale made by the club of intoxicating liquors. The stipulation of facts says that the club purchased intoxicating liquor and supplied it to members and their guests, and that the amount paid by the members for such drink was in excess of the original cost to the club. Was this a sale within the meaning of the statute? There is no definition given by the statute of the word "sale" as used generally throughout the code, but we are admonished by the provisions of sec. 15 of the code that "words and phrases are construed according to the context and the approved usage of the language," and the word "sale" as used in said section is a word that has been well defined in its meaning by the courts and text-writers, and is also a word of approved usage. As generally used, "sale" means the transfer of title by valid agreement from one party to another for some consideration. (1 Mechem on Sales, sec. 1; 1 Benjamin on Sales, p. 1; Black's Law Dictionary, p. 1053.)

In the case of *State v. Kline,* 50 Or. 426, 93 Pac. 241, in defining the word "sale" used in a statute which prohibited any person within the prescribed bounds of a prohibition district to sell any intoxicating liquors whatsoever, and that such person should be subject to prosecution, the court says: "It would seem from an inspection of the language last quoted that the section was framed with an intent to prevent the disposal of intoxicating liquors by a nonincorporated social club to its members within prohibited territory, even if it were determined that the transfer of the special property in the liquor by an agent of the organization to a member thereof constituted only a gift. Where, however, as is assumed in the case at bar, intoxicating liquors are purchased by an incorporated society to be used as is hereinbefore detailed, it would appear that the corporation is the owner of the liquors, and when they are dispensed to a member with the intent to pass the title in the goods the act constitutes a sale." In that case the court had under consideration the liability of an agent of

a corporation organized for the same general purpose as the appellant in this case.

In the case of *Manning v. Canyon City,* 45 Colo. 571, 101 Pac. 978, 23 L. R. A., N. S., 192, the supreme court of Colorado had under consideration the liability of members of the board of control of an Elks Club, charged with violation of an ordinance of Canyon City in making a sale of liquor contrary to the provision of the ordinance, and the court said:

"When the members of the club clothe the board of control with the authority to dispose of liquor belonging to the club, they relinquish their right to have the entire property of the club remain intact for joint use, occupancy and enjoyment of all the members, and make such board their agents to dispose of the liquor, and, in our opinion, such disposition by the board is a sale pure and simple. The transaction appears to contain all the elements of a sale. Such transaction is but a contract between the parties to give and to pass rights of property for money which the buyer pays, or promises to pay, to the seller for the thing bought and sold."

In the case of *United States v. Alexis Club,* 98 Fed. 725, Judge McPherson discusses this question and says:

"If a chartered club, such as the defendant, buys liquor, the legal title to this property is in the corporation, and not in the members. . . . . The legal title, then, being in the corporation, it is further to be observed that, when the title passes to the consumer, it passes by a transaction that exhibits every element of a sale, and shows no outward sign of being anything else. The intending consumer asks to be served with a definite quantity of intoxicating drink. The owner of the legal title to the liquor, acting by a paid servant, agrees to the request, requires the price to be paid in cash, or accepts the consumer's promise to pay in the future, and thereupon delivers the subject of the bargain. Nothing else takes place, and, if this is not a sale, but is really a partial distribution of the common stock, the truth is so veiled that the participants in the transaction, I venture to assert, rarely suspect that they are taking part in anything but a commonplace sale. It is safe to say that—except, perhaps, among those lawyers

that may be familiar with the discussion upon the subject—
to order and receive liquor at a club is always regarded as a
sale, and I see no sufficient reason for declining to accept the
popular estimate of an act so generally known and so easily
comprehended.''

We think this statement of the federal court is correct and
clear and that but little can be added to what is there said.
We think, however, we might supplement the language of that
court by saying that we do not believe that the opinion is gen-
erally entertained by members of any social club, incorpor-
ated under the laws of a state, which sells intoxicating liquors,
and a charge is made therefor, that the transaction is any-
thing else than a sale.  The member makes the purchase in
the same manner and pays the same price for the article
purchased as he would at the common bar of a saloon, and the
transaction is carried on in the same manner as a transaction
involving the purchase of a pound of sugar or a can of coffee
in a grocery store.  He never considers or recognizes that the
article purchased is his property or that he is paying for a
distribution of property belonging to himself, but does recog-
nize that the property is the property of the club, and that
he is paying for the same in the same manner as he would
pay for any article purchased of a mercantile company en-
gaged in that line of business.

In the case of *City of Spokane v. Baughman,* 54 Wash. 315,
103 Pac. 14, the supreme court of the state of Washington had
under discussion the question of the sale of intoxicating liquor
at the Spokane Club, organized for the same general purposes
and having the same objects as the appellant club, and says:
''Among other accommodations furnished by the Spokane
Club for the use of its members and their guests . . . . it has
maintained a room in the club quarters, with one of the regu-
lar club employees in charge, where cigars, liquors, wines,
beers, and mineral waters are furnished, at charges from time
to time fixed by the board of managers of the club.  No money
is received by the attendant for goods so furnished, but slips
are signed by the members, showing the character of the goods
furnished and the cost thereof.  These slips are turned in by

the attendant to the bookkeeper of the club, and are charged to the account of the member, and in due course are paid by him." The language of the ordinance which was alleged to have been violated provides: "If any person shall, within the limits of the city of Spokane Falls, sell, dispose of," etc., and the court says: "When the liquor is bought through the regularly constituted agent of the corporation, it undoubtedly belongs to the corporation, the title, as well as the possession, being in the corporation, and it remains there until it is transferred to the buyer for a consideration. Then it becomes the property of the purchaser, and is at his absolute disposal. He can drink it himself, give it to his guest, or throw it away; the corporation has no further interest in it. In other words, it has been paid for, and the transaction, it seems to us, involves all the elements of a sale."

In the case of *State v. Minnesota Club*, 106 Minn. 515, 119 N. W. 498, 20 L. R. A., N. S., 1101, in discussing this question the supreme court of Minnesota says: "It will thus be seen that the cases relied upon by respondent either follow the English rule that the distribution of intoxicating liquors to club members does not constitute a sale, for the reason that the members are the joint owners of the property and are merely distributing to themselves property which they already own, or are based upon peculiar statutes which fairly indicate that the legislature only intended to make the license law apply to the retail of intoxicating liquors, where it was carried on as a business for profit as a means of livelihood." This case particularly illustrates the basis of the many decisions cited by appellant and hereafter referred to, for it clearly shows that all such cases are either based upon the English rule or are based upon statutes which indicate that the legislature intended to make the license law apply only to the retailing of intoxicating liquors where it is carried on as a business for profit as a means of livelihood; in other words, where the business of selling intoxicating liquors is the general business carried on by the seller of the intoxicating liquors. The appellant company is a corporation organized under the laws of the state, and the English rule applicable

to voluntary associations where property is held in common has no application. Neither does the statute make any exception in favor of corporations of the character or kind of the appellant.

In discussing a similar question, the supreme court of the state of Illinois in *South Shore Country Club v. People,* 228 Ill. 75, 119 Am. St. 417, 81 N. E. 805, 12 L. R. A., N. S., 519, 10 Ann. Cas. 383, says: "The liquor belongs to the corporation as a legal entity, and no member owns any share of the liquor, as a tenant in common with the other members or otherwise. . . . . A member of such an association has no individual right or interest in the property and owns no proportionate share of it. . . . . The arguments presented to show that the dispensing of liquors for fixed prices paid by the member is not a sale, if applied to the case supposed or any other conceivable transaction, would certainly be unique. We agree with the views expressed in *State v. Easton Social etc. Club,* 73 Md. 97, 20 Atl. 783, 10 L. R. A. 64, that there is no occasion to be astute and to indulge in questionable refinements in order to relieve these corporations of the just consequences of their acts, or to endeavor by artificial or fictitious reasonings to permit persons in combination to do what individuals without combination could not do." This opinion of the court clearly expresses the views of this court. If this court should uphold the position of the appellant, it would necessitate the court to either resort to judicial legislation upon the subject, or force the court by artificial or fictitious reasoning to permit the appellant corporation to do what individuals without such corporation, or other similar corporation, could not do. This latter opinion also holds that, "The fact that there is no profit in a sale does not deprive the transaction of its character as a sale, and surely it makes no difference that the sale of the liquor is only incidental to the main purpose of the club. . . . . It is immaterial whether the main purpose of a corporation is social pleasure or making money by the sale of merchandise if intoxicating liquor is sold at retail as an incident of the main

purpose or otherwise, and neither is the fact that the public, generally, are not admitted.''

In the case of *People v. Soule,* 74 Mich. 205, 41 N. W. 908, 2 L. R. A. 494, the supreme court of Michigan in discussing this question says: ''It appears to be a simple and unanswerable proposition that the liquor was in the first place owned by the corporation as corporate property, the same as any person might own it; that when it was delivered to a member of the corporation for money paid to the corporation or its agent, and going into its funds, it was a sale to that member.''

In the case of *State v. Essex Club,* 53 N. J. L. 99, 20 Atl. 769, the supreme court of New Jersey says: ''The club purchases the entire cask, and disposes of it in small quantities from time to time to such members as desire to be served with it. The corporation is a person, and it is the case of an individual owner of a cask of wine disposing of it to such individuals of a selected class as may desire to have it at a stipulated price. Every quality of a sale is present in such a transaction.''

So we might cite many other cases holding to the same effect, a few of which are as follows: *State v. Easton Club,* 73 Md. 97, 20 Atl. 784, 10 L. R. A. 64; *State v. Mudie,* 22 S. D. 41, 115 N. W. 107; *Martin v. State,* 59 Ala. 34; *Beauvoir Club v. State,* 148 Ala. 643, 121 Am. St. 82, 42 So. 1040; *Marmont v. State,* 48 Ind. 21; *State v. Mercer,* 32 Iowa, 405; *State v. Lockyear,* 95 N. C. 633, 59 Am. Rep. 287; *State v. Horacek,* 41 Kan. 87, 21 Pac. 204, 3 L. R. A. 687; *State v. Boston Club,* 45 La. Ann. 585, 12 So. 895, 20 L. R. A. 185; *Mohrmann v. State,* 105 Ga. 709, 70 Am. St. 74, 42 S. E. 143, 43 L. R. A. 398.

While there are many other authorities supporting the rule announced in the cases cited and considered above, yet we deem it unnecessary to go into a further discussion of those cases. We think the weight of authority is with the proposition that where a statute in positive terms prohibits the sale of intoxicating liquors to be drank upon the premises where sold, without first procuring a license, and no exceptions are made excluding clubs organized as corporations, and such cor-

porations are persons under the statute, then all sales made by a person or corporation of whatever character, where no license has been procured, come within the provisions of Rev. Codes, sec. 1506.

We shall now go through the general rule and opinions found in the text-books and the leading opinions cited by counsel for appellant. The rule deducible from a number of decisions is given as follows (17 Am. & Eng. Ency. of Law, 361, 2d ed.) : "The rule deducible from a number of decisions is that where a club is organized in good faith for social purposes, with a limited and selected membership, in which the furnishing of intoxicating liquors is without profit to the club, and merely incidental to the main purpose of its organization, such furnishing will not constitute a sale within the meaning of statutes prohibiting sales without a license." The same general rule is announced in 23 Cyc. 117; Black on Intoxicating Liquors, sec. 142.

In the case of *Cuzner v. California Club,* 155 Cal. 303, 100 Pac. 868, 20 L. R. A., N. S., 1095, the supreme court of California says: "If it be deemed proper by the city of Los Angeles that *bona fide* social clubs, engaged in the transaction of the kind here involved, should pay a license tax, or be in any way subjected to the operation of reasonable regulations relative to the sale or disposition of intoxicating liquor, it will be a very simple matter for it to so provide by the use of language that would clearly show such an intent." This objection is very easily answered by saying that if the city of Los Angeles, or any other city, was intended to be excluded from the operation of an ordinance or statute which absolutely prohibits the sale of intoxicating liquors without a license, it was a very simple matter for the city or the legislature to so provide by language that clearly shows such an intent. We cannot agree with the California courts or the cases which follow its reasoning. To our minds these cases announcing such a rule have attempted to lay down principles which would shield and protect certain classes selling intoxicating liquors in violation of a statute.

In the case of *Klein v. Livingston Club,* 177 Pa. 224, 55 Am. St. 717, 34 Atl. 606, 34 L. R. A. 94, the supreme court of Pennsylvania says: "If such use was not of immoral tendency, yet was a luxury or privilege that would bear taxation and yield revenue, they knew that fact. Yet there are no words in the act, which, by any possible construction, can be stretched into a prohibition of the use of liquor in clubs, or that can be deemed as requiring they shall be licensed. . . . . The plain implication is that the consumption of liquor in clubs, as known to the legislature, was not deemed a sale." That decision cannot be accepted in the face of a positive statute of this state which says that it shall be unlawful for any person to sell spirituous, etc., liquors to be drank in or about the premises where sold without first procuring a license. It would be amusing, indeed, to attempt to apply the rule announced in the Klein case in the face of the positive language of the statute.

The case of *Graff v. Evans,* L. R. 8 Q. B. Div. 373, one of the English cases dealing with this question, and which has been followed by most of the courts adhering to that doctrine, holds: "I think the true construction of the rules is that the members were the joint owners of the general property in all the goods of the club, and that the trustees were their agents with respect to the general property in the goods. . . . . The question here is, Did Graff, the manager, who supplied the liquors to Foster, effect a 'sale' by retail? I think not. I think Foster was an owner of the property, together with all the other members of the club. Any member was entitled to obtain the goods on payment of the price. A sale involves the element of a bargain. There was no bargain here, nor any contract with Graff with respect to the goods." There can be no question but that this case has no application to a club incorporated under the laws of this state, where the ownership of the property is in the club and not in the members of the club.

In the case of *Commonwealth v. Pompherte,* 137 Mass. 564, 50 Am. Rep. 340, the supreme court of Massachusetts in discussing a similar case holds in effect that a member of a *bona*

*fide* club organized for the purpose of furnishing its members with refreshments, admission to which could not be obtained by any person at its pleasure, was not guilty of keeping liquors with intent to sell the same, when it appeared that the liquors were owned in common by the members, that they were furnished only to the members, and that they were kept by the defendant as one of the members of the club and as steward of the club. This rule could hardly be applied to the facts of the present case, for the reason that it was admitted the liquor was owned by the club. The club was a corporation and the members had no property interest in the assets of the club, except such as might come to them upon winding up the affairs of the club. They were not owners in common with the other members of the liquors purchased by the club and sold to the members.

In a case from the state of New York, *People v. Adelphi Club,* 149 N. Y. 5, 52 Am. St. 700, 43 N. E. 410, 31 L. R. A. 510, in discussing this question, the court says: "We think that the transaction with Stark did not amount to a sale within the meaning of the statute. It was but a distribution among the members of the club of the property that belonged to them. The fact that a payment was made does not change the character of the act, for it was but the means adopted by which each member could receive his own and not that belonging to his fellow-member." The legislature of that state, however, very soon thereafter passed a statute which made clubs amenable to license provisions, and no doubt were led to do this by reason of the ridiculous reasoning disclosed by that decision. It would be rather amusing, indeed, to say that under the facts of this case, where the Commercial Club purchased liquor and kept it on hand and sold it to members and their guests, that that was a distribution among the club members of property that belonged to them. Such a proposition as this would enable organizations to be made which would wholly evade and nullify every police regulation that the legislature might see fit to pass regulating the liquor traffic.

The case of *State ex rel. Bell v. St. Louis Club,* 125 Mo. 308, 28 S. W. 604, 26 L. R. A. 573, is also cited, in which the court

holds: "Applying the test that commends itself to our best judgment, in view of the conflict in the decisions, we think that where a social club as in this case is clearly a *bona fide* organization, with a limited membership, and admission into which cannot be obtained by any person at his pleasure and its property is actually owned in common by its members, a distribution of wine or other liquors belonging to such club, among its several members, is not a sale of liquor by retail or in original packages within the meaning and purview of our dramshop act, although technically the act does amount to a sale for some purposes." What is there said in some respects applies to the case under consideration. The Boise Commercial Club is a *bona fide* organization and its purpose is entirely different from what a dramshop or saloon keeper has in making sales of intoxicating liquor, but under our statute the sale by the club is not a distribution of the club's property, therefore that part of the decision is not applicable to the facts of this case; however, the court is driven to admit that technically the act would amount to a sale for some purpose. So, too, in the case of the Commercial Club, under the facts there was a sale. The club transferred intoxicating liquors to a member and the member paid a price therefor in return.

In the case of *Piedmont Club v. Commonwealth*, 87 Vt. 541, 12 S. E. 963, the court had under consideration a statute, which, among other things, provides: "No person, corporation, company, . . . . shall . . . . engage in the business of rectifying," etc., "or sell, or offer to sell, . . . . ardent spirits. Any person . . . . desiring to carry on the business of a retail liquor merchant, and also that of a bar-room, shall obtain a separate license for each," and holds that the defendant club in dispensing liquors to or at the expense of its own members was not engaged in carrying on the business of selling liquor, and a liquor license is only required of those persons who sell or offer to sell as a business. The statute of this state, however, does not only require that a person engaged in selling intoxicating liquors as a business must have a license, but that every sale is unlawful if the liquor is sold to be drank

upon the premises unless a license be first procured. So it will be seen that this decision is not applicable to the facts of this case.

In the case of *State v. McMaster,* 35 S. C. 1, 28 Am. St. 826, 14 S. E. 290, in discussing a statute which made it unlawful to sell liquor without a license to do so, the supreme court of South Carolina said: "As I understand it, the law does not prohibit the use of liquors, but merely regulates the sale. . . . . The club owned the liquors, and we suppose that each of its members had the right to use his part of them as he pleased. . . . . It seems to us such view is very technical, and that the more reasonable construction is that the regulations of the club amounted substantially to a method of dividing the property among its owners." As we have before stated, the members of the Boise Commercial Club did not own the intoxicating liquor that is sold at the Commercial Club. The liquor is the property of the club, and a sale to a member is not a distribution of the club's property or the individual members' property.

The most recent case to which our attention has been called by the appellant is that of *State v. Duke et al.* (Tex.), 137 S. W. 654. This case arose in Texas, where there had been many decisions upon the question of whether the sale of intoxicating liquors to members of a club, merely as an incident to the objects and purposes of the club, was a sale under the statutes of Texas, and the court holds: "That a *bona fide* club, situated in a precinct, city, or town where liquor may be lawfully sold, organized for purposes permitted and sanctioned by law, which, as a mere incident to its organization and without profit, furnishes liquors to its members, and not to the public generally, is not a person, under the laws of this state, engaged in the occupation or business of selling intoxicating liquor. That, while each individual act of such a club, in territory where the sale of liquor is prohibited by law, is a sale." This decision is based largely upon the fact that a statute of the state had been under consideration a number of times by the courts of that state, and the court had held that the revenue laws would not apply to the sale of

intoxicating liquors where the person making the sale was not engaged in the business; and that a later act which substituted the word "sell" for the words "engaged in business" would not change the former act, and therefore a *bona fide* club which dispensed intoxicating liquors as an incident to its organization was not engaged in the occupation or business of selling intoxicating liquor, and upon this point followed former decisions, although they held each individual act of such club in territory where the sale of intoxicating liquor was prohibited was a sale. Comparing the statute of that state with sec. 1506, the difference plainly appears, and especially is that true in view of the construction placed upon the Texas statute. Sec. 1506 does not require a license only from those engaged in the business or occupation of selling liquors, but it is made unlawful for any person to sell, whether such person be engaged in the business of selling or not. The person making the sale is not required to be engaged in that particular business; if it is a sale, then a license must be procured under the provision of the statute, and the Texas case holds such is a sale if it be in territory where the sale is prohibited. In this state the sale is prohibited where a license is not obtained, and a sale without license is in territory where a sale is prohibited without the same.

Many other cases are cited by counsel for appellant, which hold that a club organized for social purposes, such as the Boise Commercial Club, where intoxicating liquors are purchased by the club and dispensed to members, and such disposition of the intoxicating liquors is merely incident to the main objects and purposes of the club, is not subject to revenue license laws, and although the statutes make no mention of the club as being exempt from the provisions of the revenue laws, yet the courts will say that sales made by such a club are merely a distribution of the property of the club to the members to whom it rightfully belongs, and that therefore there is no sale. We cannot agree with this line of decisions. In our judgment, every single opinion which holds as above indicated partakes of a disposition and effort on the part of the court to shield the clubs and remove them from

the operation of statutes, solely because they are social in character and composed of men who are inclined to promote commercial interests and business opportunities and social gatherings.   To our minds, that theory of the application of the law results in a class distinction which is unreasonable and dangerous, and not justified by legislative enactments or common-sense application.

It is also argued on behalf of appellant that the appellant club has not been called upon to procure a license under the provisions of sec. 1506 of the Rev. Codes since its organization, until a short time before the stipulation of facts was entered into, and that the appellant club was never required by the county or its officials nor by any state official to take out a license under said section, and that such demand has never been made upon any *bona fide* social club or corporation throughout the state, although such clubs and corporations have been in existence and in operation in Ada county and other parts of the state for more than fifteen years, and had furnished and supplied intoxicating liquors in the manner adopted by the appellant club; and because of this policy in carrying out the laws of the state, it is claimed that the legislative intent in enacting sec. 1506 is shown, and that such clubs were not intended to be within the provisions of said section.   After sec. 1506 was enacted, as a law of the state, and in plain, clear and positive language prohibited the sale of intoxicating liquors, to be drank on the premises where sold, without a license, it was the duty of the proper officers in each county to enforce the law, and collect the revenue provided for in the statute from all persons making sales of liquor in violation of the law, and the mere fact that such officers have failed to perform their duty will not control this court in giving effect to the plain language of the statute.   It is an elementary principle that the neglect or failure of public officers to do and perform their duties as required by law will not estop the public or prevent any rights or acts of the state in enforcing such laws, and we are not inclined to announce as a legal proposition that the failure of the public officials to collect a revenue license where such is required, for

a number of years, will be evidence of the intent of the legislative body in passing such law, to exclude from the operation of such statute persons and corporations from whom such officers have failed to collect such revenue license.

We have most carefully gone through and examined the cases cited by both sides in this case, and are thoroughly convinced that under the provisions of sec. 1506 the question is not in doubt; that the section was intended by the legislature to prohibit all persons of every kind, nature and description, including corporations of all kinds and natures, from selling intoxicating liquors to be drank on the premises, without first procuring a license, and that good reasoning and common sense make such statute applicable and operative as against a corporation, although the sale of intoxicating liquors is a mere incident of the general objects and purposes of the club.

The judgment of the trial court is affirmed. Costs are awarded to the respondent.

Ailshie and Sullivan, JJ., concur.