376 So.2d 186 (1979)
Charles R. BRADY, Jr., Chairman, Mississippi State Tax Commission
v.
GETTY OIL COMPANY.
No. 51438.
Supreme Court of Mississippi.
September 26, 1979.
Rehearing Denied November 14, 1979.
William N. Lovelady, Jr., James H. Haddock, Joe D. Gallaspy, Jackson, for appellant.
Gerald, Brand, Watters, Cox & Hemleben, Walker L. Watters, Justin L. Cox, William S. Painter, Jackson, for appellee.
Before SMITH, LEE, and BOWLING, JJ.
LEE, Justice, for the Court:
The State Tax Commission, State of Mississippi, [Tax Commission] made an assessment against Getty Oil Company [Getty] for sales taxes in the amount of thirty-five thousand two hundred sixteen dollars seventeen cents ($35,216.17). A hearing was held before the Board of Review for reconsideration of the assessment, and it was approved. On January 19, 1977, Getty petitioned the Tax Commission for a review before the Full Commission. The Tax Commission affirmed the assessment on June 8, 1977. Thereupon, Getty paid the tax under protest and filed a bill of complaint in the Chancery Court of the First Judicial District of Hinds County, Mississippi (Honorable James Arden Barnett presiding), seeking a refund of the taxes. After hearing, the chancellor entered a decree December 4, 1978, ordering the said taxes and interest be refunded to Getty.
The Tax Commission appeals and assigns four (4) errors in the judgment of the trial court. Three (3) of the assigned errors overlap, but the questions presented are: (1) whether or not the gross proceeds received by Getty from oil field services rendered as co-owner/operator for other co-owners of various oil and gas properties throughout the state are subject to Mississippi sales tax under Mississippi Code Annotated Section 27-65-23 (1972); (2) whether or not Getty is chargeable with sales taxes on only those activities wherein a profit was made, or whether the tax is properly levied on the gross proceeds derived from a particular activity regardless of the profit factor; (3) whether a subactivity within the framework of a taxpayer's main business activity may be subjected to the Mississippi sales tax, particularly here, where Getty performs oil field services which are taxable under Section 27-65-23, but where Getty's *187 main business activity is that of exploring for, producing and marketing oil and gas, and (4) whether or not the promulgation of Rule 72 of Mississippi's Sales and Use Tax Rules and Regulations by the Chairman of the State Tax Commission to establish a clear policy with regard to the taxability of oil field services so rendered, was a proper interpretation of the legislature's intent in taxing all "services performed in connection with geophysical surveying, exploring, developing, drilling, producing, distributing, or testing of oil, gas, water and other mineral resources."
During the period of the assessment, from November 1, 1975 through September 30, 1976, Getty engaged in the business of the exploration, production and marketing of gas, oil and other mineral resources within and without the State of Mississippi. It had entered into approximately thirty-five (35) joint operating agreements with co-interest owners in various oil and gas well units throughout the state. Getty was permitted to charge the other co-owners for their proportionate share of the cost incurred in providing oil field services, including a reasonable fee for supervision. Those are the charges and fees on which the Tax Commission has levied the tax.
There are three (3) sections of the sales tax statute which are pertinent to the present case and which must be considered in order to determine whether Getty is a business operating under, and covered by, said sections. Mississippi Code Annotated Section 27-65-9 (1972) defines "business" as follows:
"`Business' shall mean and include all activities or acts engaged in (personal or corporate), for benefit or advantage, either direct or indirect, and not exempting subactivities in connection therewith. Each of such subactivities shall be considered business engaged in, taxable in the class in which it falls.
* * * * * *
`Business' shall include the activity or activities of a person in this state performing a service under contract or agreement with another person when the service performed is taxable under the provisions of this chapter."
Mississippi Code Annotated Section 27-65-13 (1972) provides for the levy of the tax:
"There is hereby levied and assessed, and shall be collected, privilege taxes for the privilege of engaging or continuing in business or doing business within this state to be determined by the application of rates against gross proceeds of sales or gross income or values, as the case may be, as provided in the following sections."
The "sections" referred to in Section 27-65-13 above are six (6) in number and, among them is Mississippi Code Annotated Section 27-65-23 (1972), which provides:
"Upon every person engaging or continuing in any of the following businesses or activities, there is hereby levied, assessed and shall be collected a tax equal to five per cent of the gross income of the business, except as otherwise provided:
* * * * * *
Services performed in connection with geophysical surveying, exploring, developing, drilling, producing, distributing, or testing of oil, gas, water and other mineral resources; ..."
Getty contends that it has made no profit on the activity of operating the co-owner/operator business of providing oil field services in producing and marketing the oil and gas; that the co-owners have simply reimbursed it pro rata for expenses incurred; that it has paid substantial severance taxes in the developing and producing of oil, gas and other minerals; and that the legislature did not intend that the sales tax in question be imposed on such operations. Getty further contends that its primary business is the finding, developing and marketing of oil, gas and minerals, not to engage in providing oil field services.
The thirty-five operations in which Getty engages as a co-owner/operator are those wherein Getty owns the greatest interest. It admits that, if an independent operator contracted to perform the same work which Getty does, the tax would be properly imposed. *188 Getty argues that, under the Unitization Act in Mississippi, pooling is required, the co-owner/operator relationship is necessary under such act, and, there again, the legislature did not intend that a sales tax be levied for something it was required to do by law.
The purpose of the Unitization Act was to facilitate the production of oil, gas and minerals in an efficient, less costly and less wasteful manner. We may assume the oil and gas industry was influential in the enactment of such legislation, since it is recognized that the statute is beneficial to that industry.
We again refer to Section 27-65-9 which defines "business" as meaning "all activities or acts engaged in ... for benefit or advantage, either direct or indirect, and not exempting activities in connection therewith." (Emphasis added).
Getty argues that its main business is discovering, producing and marketing oil, gas and minerals and that its services as an operator in conjunction with co-owners is incidental to its main business, that it is not permitted to make a profit on said operation, and makes none. It says that, therefore, its relationship with the other co-owners is an activity which the legislature did not intend to impose a sales tax on. However, Getty receives a benefit in its operation as co-owner/operator in that it is able to develop, produce and market oil, gas and minerals in an efficient operation, which involves less expense and less waste to it. That benefit and advantage comes within the definition stated above.
In Bank of America National Trust & Savings Assn. v. State Board of Equalization, 209 Cal. App.2d 780, 26 Cal. Rptr. 348 (1963) the court considered a use tax assessment upon a bank's sale of personalized checks to its customers where the taxpayer complained that it was not in the business of selling checks but was merely rendering a service to its customers, the said service resulting in a loss to the bank. The court stated:
"We must next determine whether the Bank was `engaged in the business' of making sales of said checks as that term is used in section 6015, subdivision (b). As defined in section 6013 `"Business" includes any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit, or advantage, either direct or indirect.' The Bank urges that it was not in the business of selling checks but was merely rendering banking services. The term `business' must be interpreted, however, in the light of the foregoing statutory definitions. (Market St. Ry. Co. v. Cal. St. Bd. Equal., 137 Cal. App.2d 87, 95, 290 P.2d 20.) Accordingly, it is not used in the commercial sense nor is it necessarily restricted to a commercial enterprise. It is not necessary, moreover, that the main business of the one who sells be that of making of retail sales, or for that matter, that the sales in question occur in the regular business of the seller. (Bigsby v. Johnson, 18 Cal.2d 860, 118 P.2d 289; Market St. Ry. Co. v. Cal. St. Bd. Equal., supra)... .
* * * * * *

The fact that the Bank's activities with respect to these checks were carried on at a loss is not relevant to the determination of the question because it is not required that the sales be made with the intention of making a profit. As said in Market St. Ry. Co., `The criterion expressed in the statute is "gain, benefit, or advantage," not "profit."' (Page 95 of 137 Cal. App.2d, 290 P.2d page 25) (Citing Union League Club v. Johnson, 18 Cal.2d 275, 115 P.2d 425, where sales by a nonprofit corporation were held to be taxable notwithstanding its activities were carried on at a loss.) There can be no question here that the sale of the checks had for their objective a benefit and advantage to the Bank in connection with its banking services and the betterment of its relations with its customers." (Emphasis added) 26 Cal. Rptr. at 358.
Getty cites Stone v. Martin Veneer Corp., 183 Miss. 712, 184 So. 435 (1938), Stone v. Allis-Chalmers Manufacturing Co., 193 Miss. 294, 8 So.2d 228 (1942), and M.L. *189 Virden Lumber Co. v. Stone, 203 Miss. 251, 33 So.2d 841 (1948). However, those cases may be distinguished from the case sub judice and are not in point.
We are of the opinion that the tax was properly imposed upon the business activity of Getty in providing oil field services as co-owner/operator for itself and other co-owners and in collecting expenses therefor (Getty was not taxed on its own part of the operation). The questions presented in (1), (2) and (3) stated at the outset are resolved in favor of the Tax Commission.
Mississippi Code Annotated Section 27-65-93 (1972) authorizes the Tax Commission to make regulations which set forth the policy of the commission in levying and collecting taxes. It provides, in part:
"The commissioner shall, from time to time, promulgate such rules and regulations, not inconsistent with the provisions of the sales tax law, for making returns and for the ascertainment, assessment and collection of the tax imposed by said law as he may deem necessary to enforce its provisions; and, upon request, he shall furnish any taxpayer with a copy of such rules and regulations." (Emphasis added)
Acting pursuant to the authority granted by said section, the Tax Commission adopted Rule 72 of the Sales and Use Tax Rules on November 1, 1975, in order to clarify the commission's policy with relation to oil field services. Rule 72 follows:
"Rule 72. OIL FIELD SERVICES

Every person engaging in the business of performing services in connection with geophysical surveying, exploring, developing, drilling, producing, distributing or testing of oil, gas, water or other mineral resources is liable for tax at the rate of 5% on gross income received except as otherwise provided. This includes persons acting as operators or performing management services for a fee in connection with developing, producing or distributing mineral resources. Where the operator owns an interest in a well under his management, he is liable for the tax on compensation received from the other owners.
Any business which performs taxable services incurs business expenses which of necessity must be recovered through charges for its services. Such expenses include meals and lodging for employees, mileage, equipment rental and supplies such as chemicals, swab cups and explosives which are used or consumed in the performance of services. The term `gross income' includes charges made for recovery of these expenses and is subject to tax irrespective of the fact that they may be itemized or that the goods or services have borne a retail tax at the time of purchase.
`Gross income' from gathering and interpreting data within and without this State may be apportioned between the states if adequate records are maintained. `Gross income' does not include receipts which constitute reimbursement by clients for cost of easements to cross or enter land of property owners or for property damage payments. In addition to services ordinarily rendered, the operator of a management company may also act as agent for well owners in arranging for other services. In such cases, the operator is not liable for tax on receipts which represent rebilling to the owners of payments made to vendors by the operator for property purchased and services performed for owners on which the retail rate of tax has been paid to the vendors.
The gross income from oil field services performed in Mississippi is subject to a 5% sales tax rate with the following exceptions:
(1) Compensation received from a contract in excess of $10,000 to drill, redrill, or work over an oil well or a gas well is subject to 2-1/2% tax. (See rule 56).
(2) When service is performed for another dealer in the same services, the wholesale rate of 1/8 of 1% is applicable.
Equipment purchases or rentals and purchases of supplies are subject to the 5% rate of tax."
*190 Getty does not attack the above rule on the ground that the Tax Commission lacked authority to adopt and promulgate it, but contends that the Tax Commission has not imposed a sales tax on such activities in twenty-five (25) years and that failure to do so amounts to a construction of the statute that the tax does not apply to Getty's activity. Further, Getty argues that such failure, or construction, expressed the legislative intent not to impose the tax, particularly since the act had been amended or re-enacted approximately eight (8) times without expressing a different intent.[1]
2 Am.Jur.2d Administrative Law § 236, at 63 (1962) states:
"Construction and interpretation by an administrative agency of the law under which it acts provides a practical guide as to how the agency will seek to apply the law, and an experienced and informed judgment to which courts and litigants may properly resort for guidance. Such construction extends beyond meeting the necessities of administration and is given effect by the courts when they are called upon to determine the true construction and interpretation of such laws. However, one who chooses to rely upon an interpretive regulation does so at his own peril and stands the risk of its not being followed by the courts. Also the fact that an interpretation has been made by regulation or otherwise does not preclude a subsequent different, but correct, interpretation by the agency. An erroneous construction of a statute by a state department cannot operate to confer a legal right in accordance with such construction.
An agency's interpretation of its own rule becomes part of the rule."
In Monaghan v. Jackson Casket Company, 242 Miss. 840, 136 So.2d 603 (1962), the taxpayer contended, as does Getty, that the Tax Commission had failed to tax a particular activity in the past and that it should be estopped from assessing a tax on that particular activity. The Court said:
"It is argued, however, that the sales tax law has been in effect since 1932, and that the administrative officers in charge of the enforcement of the law, knowing of the existence of companies selling such supplies and equipment to undertakers, have treated such sales as nontaxable and have made no effort to collect sales taxes on such sales; and that the failure of such officers to collect said tax should be treated as an administrative interpretation of the statute, which should be accepted as binding on the appellant. But we think there is no merit in that contention.

The mere failure of public officers charged with a public duty to enforce statutory and constitutional provisions in respect to the levy and collection of taxes should not be permitted to stand in the way of the correct administration of the law. In Vicksburg, Shreveport & Pacific R.R. Co. v. Dennis, 116 U.S. 665, 6 S.Ct. 625, 29 L.Ed. 770, the Court held that the omission of the taxing officers of the state to assess certain property could not control the duty imposed by law upon their successors, or the power of the legislature to tax the property, or the legal construction of a statute under which its exemption from taxation was claimed. See also Commonwealth v. Kentucky Distilleries and Warehouse Company (1911), 143 Ky. 314, 136 S.W. 1032; Ada County v. Boise Commercial Club (1911), 20 Idaho 421, 118 P. 1086, 38 L.R.A., N.S., 101.

Mere inaction on the part of the taxing officers of the state in previous years to assess the sales tax justly due on sales of a similar nature to the sales in question on this appeal cannot control the duty imposed by law upon their successors, or the legal construction of the statute under which the exemption is claimed." (Emphasis added) 136 So.2d at 606-607.
Five (5) years later in Barr v. Delta & Pineland Company, 199 So.2d 269 (Miss. 1967), the Court said:

*191 "When the legislature re-enacts a statute, it is presumed to know and adopt the construction placed thereon by the State Tax Commission. Gully v. Jackson International Co., 165 Miss. 103, 145 So. 905 (1933); White v. Miller, 160 Miss. 734, 133 So. 146 (1931)." 199 So.2d at 271.
Since the Rule 72 was adopted, the Mississippi Legislature has met in every year and has not changed or altered the law or regulation with regard to the taxability of oil field services. Such is an inference the legislature intended that those activities be liable for the sales tax. We are of the opinion that the tax is not an unwarranted extension of the Sales Tax Law and that question (4) should be answered in favor of the Tax Commission.
The judgment of the lower court is reversed and judgment is entered here for the Mississippi State Tax Commission.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.
NOTES
[1] In 1978 the legislature enacted the statute again which expressed the intent set forth in Tax Commission Rule 72.