King, J.,
delivered the opinion of the court.
In March, 1906, an action was brought in the name of the People of the State of Colorado by information in the nature of quo warranto upon the relation and complaint of II. M. Jamieson and four *39 others, in the district court of the Eleventh Judicial District in and for the county of Fremont, against The Canon City Labor Club, a corporation, appellant herein, for the purpose of obtaining’ a judgment revoking the corporate franchise of the said respond-dent and assessing a fine or penalty against it.
The complaint as amended alleged that the relators were resident electors and taxpayers of the city of Canon City in said county and state; that the district attorney had, upon application and request and upon the complaint of said relators, refused to bring such action of prosecute such proceeding, and that thereafter and before the commencement of the action the relators had presented their complaint to the judge of said district and made showing that the district attorney refused to take action in the matter, whereupon the said judge granted leave to said relators to file and prosecute their complaint in the name of the people of the state of Colorado without the aid and sanction of the said district attorney; that the city of Canon City was a municipal corporation, a city of the second class, and that the city council had adopted certain ordinances which prohibited the sale or giving away within the corporate limits of said city of intoxicating, malt, vinous, fermented or mixed liquors, and specifically prohibited the sale, giving away, distribution or delivery of any of such liquors by any means or device such as the organization of a club, incorporated or otherwise, for the purpose of evading the provisions of said ordinances, under a penalty of not less than one hundred and not more than three hundred dollars; that the respondent was a corporation organized under the laws of the state of Colorado by cer *40 tain persons named in the complaint, under the name of The Canon City Labor Club, the articles of incorporation of which (set forth in the complaint) show that it was organized under the provisions of the general incorporation act concerning corporations not for pecuniary profit, the objects stated in the articles being “social purposes and-the transaction of any business incidental to a social club,” there being no capital stock and no stockholders. The complaint also alleges that the rules of the club provided that any person acceptable to two members of the board of directors might become a member by application, and upon the payment of fifty cents, membership fee; that there were several hundred members. of the club; that immediately upon its organization and the expiration of a license for a certain saloon, the premises formerly occupied by the saloon were rented by the club together with all the furniture, fixtures and appliances theretofore used by the saloon in dispensing liquors; that Joseph Walton, owner of said saloon, was made manager of the club, Frank G-oldsberry, one of the incorporators, formerly bartender for the saloon, became bartender for the club, and John D. Lloyd, one of the owners of the building, became secretary and treasurer of the club, all under salary; that thereafter large quantities of intoxicating liquors were purchased by said manager; that United States license for the sale of intoxicants was procured and displayed in the club room; that without other license intoxicating liquors were thereafter sold and dispensed to any member of the club at the regular prices paid for such liquors in an ordinary saloon, and that members could order and did order and *41 receive for themselves and for their guests as many drinks of intoxicating liquors as they might want; that the sale, delivery and drinking of such liquors in the rooms and over the bar of the said respondent club were being carried on continuously, at all hours of the day and night, and that the sale of intoxicating liquors was the principal business of the club; that a certain class of gambling was also permitted and indulged in upon the premises and in the rooms occupied by the said club.
To this complaint demurrer was made and overruled, whereupon answer was filed denying certain allegations of the complaint and renewing demurrer upon the following grounds.: (a) that the complaint does not state facts sufficient to constitute a cause of action against the defendant; (b) that relators had no legal, capacity to sue in the action, for the •reason that said relators were mere strangers to the defendant corporation and had no interest whatsoever in the defendant corporation except that which is common to every citizen of the state.
The case was tried to the court December 15th, 1906, and thereafter, on January 14th, 1907, the court made its findings, a portion of which is as follows:
“ * * * and the court * * * doth find the issues herein joined generally in favor of the plaintiff and against the defendant, and especially that the defendant is not a good faith social chib, and that its incorporation under the laws of this state is used as a device, subterfuge and makeshift to enable it to illegally carry on the business of the sale of liquor for profit, contrary to the provisions of the laws of the state of Colorado and the ordinances of the city of Canon City therein, and that *42 it is thus unlawfully holding its said corporate franchise, and is thus unlawfully exercising alleged rights thereunder.”
And upon which findings the court rendered its decree:
“ * * * that the defendant be forever excluded from exercising any right or privilege as a corporation under its said corporate franchise granted it under and by virtue of the laws of this-state; that the said corporate franchise of the defendant be and the same is hereby revoked; that said defendant’s articles of incorporation heretofore filed with the secretary of state and the certificate thereof heretofore issued by said secretary of state be and the same hereby are declared null and void; and * * * that the defendant pay a fine of one' hundred and five 'dollars because of its unlawful holding of said franchise and its unlawful exercise of alleged rights thereunder as aforesaid, together with the costs of this action to be taxed. ’ ’
To the findings and decree of the court the respondent excepted and prayed and was allowed an appeal to the supreme court.
Counsel limit their argument to the following-assignments of error: (1) that the court abused its discretion in granting leave to relators to bring the action; (2) that the complaint did not state facts sufficient to constitute a cause of action; (3) that relators had no legal capacity to sue; (4) that the court had no jurisdiction either of the defendant or of the subject matter of the action, and particularly because the action was not prosecuted in the name of the district attorney; and these assignments will have consideration in the decision of the case.
*43 1. Counsel for appellant admit the well established rule that the granting or refusing of leave to file information in the nature of quo warranto is a-matter of discretion with the trial court, and that the action of the said court will not be reversed by a court of review unless there has been a clear abuse of that discretion. '.
It is urged by appellant that the court should have issued an order to the respondent to show cause before permitting a prosecution by private relators. Such is the practice in some of the states; but it does not appear that such practice has been adopted by the courts of this state. We are not impressed with the claim that the court abused its discretion.
2. It is said that the complaint is insufficient in that it fails to allege that the respondent violated any of the laws of the state of Colorado, and that the evidence does not show a violation of any of said laws. It is charged in the complaint that intoxicating liquors were sold by the respondent without license. The selling of intoxicating liquors without license is a violation of the statutes, and punishable under the state law, notwithstanding the fact that the sale is within the corporate limits of the city.— Gardner v. People, 20 Ill. 430.
The sale or dispensing of intoxicating liquors by this club to its members, without a license, was a violation of the ordinances of the city and the laws of the state. Manning v. Canon City, 45 Colo. 571; Lloyd et al. v. Canon City, 46 Colo. 195. And this is true even where the club is incorporated and is bona fide. Lloyd et al. v. Canon City, supra, seems to have been a prosecution under the ordinances of *44 the city of Canon City against Walton, Goldsberry and Horton, another of the incorporators of the so-called labor club, in which they were tried and convicted on the charge of selling intoxicating liquors and said conviction sustained by the supreme court.
The complaint charges and the evidence shows that this corporation was not bona fide a social club, and that its chief purpose and business was selling intoxicating liquors; that having obtained from the state a franchise to carry on a social club not for profit, the respondent (and said incorporators) unlawfully exercised that franchise as a shift and device for selling intoxicating liquors for profit and without license, and as a means to evade the consequence to the incorporators and managers of the violation of such laws and ordinances, and that such franchise was not being exercised for any lawful purpose.
The complaint states facts sufficient to constitute a cause of action.
3. 'The argument of counsel for appellant is directed chiefly to its contention that the relators had no legal capacity to bring this action, inasmuch as they were strangers to the respondent corporation and had no interest therein except such as was common to every citizen of the state of Colorado. The only allegation of the complaint or information as to the character or capacity of relators is that they “are resident electors and taxpayers of the city of Canon City in Fremont county, Colorado.” This was denied by the answer, and no evidence that they were resident electors or taxpayers of said city, county or state was offered at the trial. The capacity of the relators to sue was a preliminary matter *45 to be ascertained by tbe court or judge upon tbe application for leave to file tbe information, and in tbe absence of any showing to tbe contrary it will be presumed by tbis court that tbe trial judge made sucb investigation at and prior to tbe granting of leave to prosecute said action in tbe nqme of .the people.
4. It was alleged and proven that the district attorney upon request made by relators and their attorneys and upon complaint being submitted to him, refused to prosecute the proceeding, and under the circumstances in this case such refusal was sufficient to authorize the court to permit the prosecution upon the relation of such private parties without the aid or sanction of the district attorney, sec. 320 Code Civ. Proc. Upon this question our attention is called to, and appellant relies upon, a decision of the supreme court of this state in People ex rel. Byers v. Grand River Bridge Company, 13 Colo. 12. That case is easily distinguished from the one now before us. It was brought by private relators without the consent of the district, attorney, or leave of the court, for the purpose of redressing alleged private grievances to the relator in which the public bad no interest. Tbe respondent was a bona fide corporation organized for tbe purpose of constructing and operating a wagon bridge which it bad constructed and was operating. Demurrer was sustained to tbe complaint evidently for tbe reason that it did not show that leave of court bad been obtained; that the relator bad any interest different from every citizen of the state, or that the public was in any manner concerned in the controversy; and, as said by our supreme court in People v. Regents here *46 inafter mentioned, that such relator conld not as a matter of right institute and maintain said proceeding.
In People ex rel. v. Londoner, 1 Colo. 303, an action of this nature brought for the purpose of ousting the mayor of the city of Denver from his office, it was .said that being £ £ a freeholder, resident and elector within the city of Denver, relator’s capacity to proceed in the name of the people cannot be challenged on the ground of insufficiency of interest. * * * A certain degree of interest on the part of relators in quo warranto proceedings is generally deemed requisite, and the officious intermeddling by parties having absolutely no interest either as taxpayers or voters, is disfavored. ’ ’
In People v. Regents, 24 Colo. 175, a case prosecuted in the name of the people upon the relation of a private citizen of the state, a resident freeholder and taxpayer of Arapahoe county, to exclude the regents of the state university from the exercise of certain franchises, and in which it was claimed that the action could not be prosecuted except in the name and with the sanction of the attorney general "of the state, the court (after calling attention to the general doctrine stated in People ex rel. v. Grand River Bridge Co., supra,) declared that in the case then before the court there was manifest propriety, if not necessity, in holding that a proceeding to correct the wrong should be in the control of a private party, subject to the supervisory power of the court, for the reason that, the attorney general being by law made the legal adviser of the board of regents, and therefore obligated to institute, prosecute and defend suits in its behalf, unless the proceedings could *47 be maintained by a private party there might be a miscarriage of justice and no practical way of correcting the wrong, however flagrant, and said:
“While it may be true that in this state the general doctrine is established (People ex rel. v. Grand River Bridge Co., 13 Colo. 11) that a purely private person may not, as a matter of right, prosecute an information under our code to correct wrongs done to the public, but is confined to cases where the injury peculiarly affects him; yet the authorities seem to be unanimous that when once the discretion of the court in which the proceeding is brought has been exercised, and permission given to relator to file an information, such discretion is exhausted, and may not be recalled; but on the contrary, the court must then proceed to determine the controversy, the same as any other, upon the law and the facts.”
In the case of the State R. R. Commission v. People, 44 Colo. 345, 351, et seq., a quo ivarranto proceeding to oust certain appointees from the offices of railroad commissioners, and in which the action was brought by private relators after refusal, by the district attorney, the court, commenting on the Londoner case, supra, said: “It is clear from the opinion that permission was granted because the publk was directly interested in an investigation of the alleged frauds, the wrong done being an abuse of the elective franchise and detrimental to the general welfare,” and directs attention to the opinion of Chief Justice Helm in said cause wherein it was said that quo loarranto proceedings are not primarily in the interest of any individual, but are intended to protect the public generally against the unlawful *48 usurpation of offices and f ranchises,baud; s that the public and prerogative function of such proceeding is still, under our information statute, its most important characteristic, and private rights secondary and subordinate, and further said:
“Prom this language it clearly appears that the substituted remedy under our code, like quo warranto at the common law, is for the protection of the interests of the public as contradistinguished from the private rights of a relator. ’ ’
Prom a consideration of the code provisions and of the foregoing decisions which declare the law in this state to be that proceedings by information in the nature of quo loarranto under the code are intended to prevent and redress public wrongs, we are persuaded that the relators in this case had sufficient interest and legal capacity to prosecute the proceeding, not as a matter of right, but with the leave and under the supervisión of the district court, even though the relief prayed for was the dissolution of a corporation. The relief granted by the court does not depend upon the prayer, but upon the allegations of the complaint and the evidence in support thereof. If private relators may, by permission of the court, institute and maintain proceedings to oust the mayor of a great city, to prohibit the regents of the state university from exercising certain powers claimed by them, there would seem to be no good reason why such private persons may not, by like permission of the court, institute and maintain proceedings to dissolve a corporation alleged to have been organized mala fide for the sole purpose of carrying on some business in defiance of the laws of *49 the state and the ordinances of the city, and to the detriment of the public welfare.
The evidence shows that immediately prior to the taking effect of the ordinances of the city prohibiting the sale of intoxicating liquors within the limits of the city, a certain saloon had been operated by said Walton under license; that the respondent was incorporated and thereupon went into possession of the premises theretofore occupied as a saloon, employed the saloonkeeper as manager, the former saloon bartender as its bartender, and one of the owners of the building as secretary, admitted so-called members to the extent of several hundred upon the payment by each of a membership fee of fifty cents or one dollar which entitled such member to the possession of a key and access thereby to the club rooms, and the right to purchase and drink on the premises and to furnish to others, whisky, beer, etc.; that said manager and other agents of the respondent procured quantities of intoxicants and dispensed them to members and their guests upon payment by the members of what was said to be the usual saloon prices for drinks; that at a time when a raid was made on the premises several wagon loads of beer and whiskey in barrels, kegs and bottles were found and taken from the premises. In fact, the saloon and its business were converted into a so-called “labor club for social purposes,” carried on at the same place but behind locked doors to which an unlimited number of persons gained admission by means of keys furnished by the respondent, and there, without police surveillance and in defiance of the law, were served with intoxicating liquors for the profit of respondent, its manager and his asso *50 ciates, and that snch business so carried on became and was a menace to the peace and good order of the community, and* a public nuisance. There was also evidence in the nature of admissions made by the manager or president of the respondent that the club was being run “just for a blind to beat the town.”
The evidence justifies the findings made by the trial court that the respondent was not bona fide a social club; that it was incorporated in bad faith and operated as a device, subterfuge and makeshift to illegally carry on the sale of intoxicating liquors for profit, contrary to and in defiance of the laws of the state and the ordinances of the city of Canon City.
Appellant complains because the judgment .in addition to the fine decrees the dissolution of the corporation. If not justified by the facts as found, this judgment was unnecessarily severe. A decree of dissolution bears the same relation to a corporation that a sentence of death bears to a natural person, and should be and is viewed with disfavor and exercised with extreme caution. A judgment of dissolution will not be rendered except in case of the abuse or misuse of corporate franchises which are of the very essence of the contract between the state and the corporation, and the acts in question have been repeated and willful. If in this case it bad appeared that the violations of the law complained of, although many, were committed through inadvertence or mistake, or that the corporation then bad or ever bad any lawful purpose, or bad been organized and was being carried on in good faith, a judgment correcting the abuse and misuse of the franchise and permitting the corporation to continue *51 might have been pronounced. There was no effort on the part of the respondent to make such a showing. The evidence does disclose that some newspapers and magazines were kept in the rooms for the use of those who were inclined to read, and when food was ordered the manager would go into the market and buy it, have it prepared at a hotel and served to the members so ordering, but this seems to have been only a part of a preconceived plan to deceive the public. The corporate franchise was obtained by false and fraudulent statements as to the purpose of the corporation' and the incorporators. We perceive no reason why. the sentence of dissolution should not be executed. The judgment is accordingly affirmed.

Judgment Affirmed.