## SPREKELSEN v. STATE.

(No. 792; Decided November 22nd, 1915; 152 Pac. 791.)

INTOXICATING LIQUORS—SALES DEFINED—RETAIL LIQUOR DEALERS—
WHEN CLUBS ARE RETAIL DEALERS—WHEN LICENSE REQUIRED—
GIVING AWAY LIQUOR—CRIMINAL OFFENSES—EVIDENCE—FACTS OR
CONCLUSIONS—STATUTES.

1. An incorporated fraternal organization maintaining a buffet and dispensing intoxicating liquors to its members only, each paying for what he orders and receives, is a retail liquor dealer within Compiled Statutes 1910, Sec. 2832, defining such dealers and requiring a license, though the furnishing of such liquors is merely incidental to the objects and purposes of the organization, and where such organization is unlicensed, a sale of whisky by its steward to a member for 15 cents is a sale and a violation of the statute.

2. Such a sale by an organization incorporated with power to own, control and sell property, whereby it disposes of property which it owns for a valuable consideration, does not come within the doctrine of an equitable distribution of property among the owners in common of the property.

3. Comp. Stats. 1910, Sec. 2832, prescribes no penalty for giving away intoxicating liquor, and such giving is not an offense.

4. It is proper to sustain an objection to a question calling for the conclusion of a witness on a question of law involved in the case.

ERROR to the District Court, Laramie County; HON. W. C. MENTZER, Judge.

The facts are stated in the opinion.

*H. Donzelmann,* for plaintiff in error.

Plaintiff in error is a bona fide lodge organization duly incorporated, maintaining a buffet wherein intoxicating liquors are dispensed to its members by and through its steward, an employee of the organization. It was not a violation of Section 2832, Comp. Stats. 1910, to sell liquor to a member without a retail license, for the reason that it is not a liquor dealer, but makes sales only to members, as an incident to the objects of its organization. There is a conflict of decision on the question, but the weight of authority, as well as the better reasoning, is on the side of

plaintiff in error, who is the steward and an employee of said organization. The court erred in sustaining an objection to a question asked a witness, as to when a member's property right in liquor dispensed to him was lost. (People v. Aldephi Club, 149 N. Y. 5.) The court erred in giving instruction number 2, which was not based upon any evidence in the case. (Firmas v. State, 20 N. W. 663; Marian v. State, 29 N. W. 911; Dunbier v. Day, 11 Neb. 605; Bradshaw v. State, 17 Neb. 147.) The court also erred in giving instruction number 3 for the same reason. The court erred in refusing to give plaintiff's requested instructions numbered 1 and 2. Sec. 2832, Comp. Stats. 1910, requiring retail liquor licenses, is not applicable to Elk Lodge No. 660, in whose employ plaintiff in error was acting. The following decisions are from states where statutes and city ordinances relating to sale of liquor are quite similar to Sec. 2832: Manassas Club v. City, 121 Ala. 561; Cunzer v. Cal. Club, 100 Pac. 868; Seim v. Maryland, 55 Md. 566. However, in Maryland the statute was changed and thereafter the following cases were decided requiring a license: State v. Maryland Club, 66 Atl. 667; State v. Easton Club, 73 Md. 97. But continuing a general citation of authority, we call attention to Comm. v. Smith, 102 Mass. 144; Comm. v. Pomphret, 137 Mass. 564; Comm. v. Ewig, 145 Mass. 119; State v. St. Louis Club, 125 Mo. 308, 26 L. R. A. 573; State v. Tindall, 40 Mo. App. 271; Bardin v. Montana Club (Mont.), 25 Pac. 1042; Sothman v. State (Neb.), 92 N. W. 303; State v. University Club (Nev.), 130 Pac. 468, 44 L. R. A. N. S. 1026; People v. Adelphi Club, *supra,* overruling People v. Semmel, 34 N. Y. 898; People v. Bradley, 33 N. Y. 562; People v. Luhr, 28 N. Y. S. 498; Klein v. Club, 177 Pa. St. 224; Comm. v. Smith, 2 Pa. St. Ct. 474; Comm. v. Pefferman, 12 Pa. S. Ct. 202; Columbia Club v. McMaster, 28 Am. St. Reps. 826; Tenn. Club v. Dwyer, 11 Lea, 452; Moriarity v. State, 25 L. R. A. N. S. 1252; Hermitage Club v. Shelton, 104 Tenn. 101; State v. Austin Club, 89 Tex. 20; Coenig v. State, 26 S. W. 835; Winters v. State, 26 S. W. 839; Ward v. State, 116 S. W.

1154; State v. Duke, 104 Tex. 355; Peidmont Club v. Comm., 87 Va. 540, 12 S. E. 963; Graff v. Evans, 8 G. B. D. L. R. 373; Newell v. Hemingway, L. J. R. 58, Q. B. Div. 46; Davies v. Burnett, L. R. 1, K. B. Div. 666. This court apparently approved an instruction in Russell v. State, 19 Wyo. 282, to the effect that if a club was organized for a lawful purpose other than the sale of liquors and sales thereof were incidental, such club would not be required to have a dealer's license. We regard the case of Moriarty v. State, *supra,* as being on all fours with the case at bar.

*D. A. Preston,* Attorney General, and *Samuel M. Thompson,* County and Prosecuting Attorney, for defendant in error.

The statute is broad in its provisions and applies to clubs that sell liquors, even where sales are limited to members. The weight of authority supports this proposition. (Woolen & Thornton on Intoxicating Liquors; Joyce on Intoxicating Liquors; Ann. Cas. 1912, A-1088.) The English doctrine is to the contrary and many of the cases hinge on this distinction, hence the transaction involved here is a sale. The following authorities support our contention that the facts in this case constitute a violation of Sec. 2832, Comp. Stats.: Beauvoir Club v. State, 148 Ala. 643; Martin's Case, 59 Ala. 34. The Manassas Club case cited by counsel is not in point, as it turns upon the definition of the word "business" as used in the statute. The case of Cuzner v. Club cited by counsel is governed by the same question. A later California case, *Ex parte* Bond, 107 Pac. 143, does decide that a club, not a bona fide club, must have a license. In Colorado, clubs are required to pay a license. (Lloyd v. Canyon City, 103 Pac. 288; Manning v. Canyon City, 45 Colo. 571, 101 Pac. 973; Canyon City v. People, 121 Pac. 120; Army & Navy Club v. Dist. of Columbia, 8 App. D. C. 544; Morham v. State, 105 Ga. 709, 52 S. E. 143, 43 L. R. A. 398; Diel v. State, 80 S. E. 537; South Shore Club v. People, 228 Ill. 75, 81 N. E. 805, 12 L. R. A. N. S. 519; County v. Club (Idaho), 118 Pac. 1086; Marmont v. State, 40 Ind. 21;

State v. Johns, 140 Ia. 125, 118 N. W. 295; Kentucky
Club v. Louisville, 92 Ky. 309; State v. Club (La.), 12
So. 895; University Club v. Ratterman, 3 Oh. Cir. C. 18;
People v. Soule, 74 Mich. 250, 41 N. W. 908; State v.
Minn. Club, 119 N. W. 494.). The Nebraska case, Soth-
man v. State, cited by the opposition, relates to non-bona
fide clubs and is not in point.. In New Jersey a license is
required. (Newark v. Club, 53 N. J. L. 99.)   Also North
Carolina.   (State v. Lockyear, 95 N. C. 633; State v. Weis,
108 N. C. 787, 13 S. E. 225.)   The following cases from
Oregon, South Dakota, Tennessee, Washington and West
Virginia hold that a license is necessary:   Bachelors' Club
v. State, 119 Pac. 339; State v. Kline, 50 Ore. 426; State
v. Mudie, 115 N. W. 107; Hermitage Club v. Shelton,
*supra;* City of Spokane v. Baughman, 103 Pac. 14; State
v. Shumate, 44 W. Va. 490.   (See also U. S. v. Giller, 54
Fed. 656.)   The case of Moriarty v. State cited by plaintiff
in error involved the question of sales of liquor for profit.
The point is unimportant here, as the evidence showed the
sale to have been made for profit.   The Wyoming cases
cited by counsel relate to non-bona fide clubs.   The Idaho
case of Ada County v. Club, *supra,* is strong and supports
our contention.   We deem it unnecessary to discuss the
assignments of error with reference to instructions given
at the trial, for if the statute applies, the instrucions were
proper.

BEARD, JUSTICE.

The plaintiff in error, Frank Sprekelsen, was convicted
in the district court of the crime of selling whisky without
a license.   From that judgment he brings error.

The question to be decided is fairly and accurately stated
by counsel for plaintiff in error in his brief, and is as fol-
lows:   "Whether the Cheyenne Lodge No. 660 of the
Benevolent and Protective Order of Elks, whose objects are
to inculcate the principles of charity, justice, brotherly love
and fidelity; to promote the welfare and enhance the happi-
ness of its members; quicken the spirit of American patriot-

ism; to cultivate good fellowship; to perpetuate itself as a fraternal organization, and to promote for its government, the Benevolent and Protective Order of Elks of the United States of America, can dispense liquor to its members, receiving either cash or a check for the same, in accordance with the regulations of the governing board of said order, and dispense such liquor by and through its steward, who was an employee of said organization, and who, in the case at bar, was the above named Frank Sprekelsen, plaintiff in error; and whether the said organization, for the dispensing of such liquor, had to have a retail liquor license under the laws of the State of Wyoming?"

There is no dispute as to the facts. The organization is a bona fide lodge of Elks, incorporated under the laws of Wyoming, owning its building, consisting of its lodge rooms, reading room, card rooms, billiard room, and a room used as a buffet, in which are kept intoxicating liquors, which are dispensed to its members only, each paying for what he orders and receives. That the furnishing of such liquors is not the principal business of the organization, but merely incidental to its objects and purposes. There is no dispute as to the sale of a drink of whisky to one of the members for fifteen cents by the steward, Sprekelsen, if such a transaction constituted a "sale" within the meaning of the statute. The statute under which the conviction was had is as follows:

"Every person who shall sell, barter, or give away any spirituous, malt, fermented or intoxicating liquor or wine by the glass, or to be drunk on the premises, or by bottle, or in less quantity than by the case of five gallons at any time, shall be known as a retail liquor dealer. Any person who shall sell or give away any such liquor or liquors, wine or wines by the case or in quantities more than five gallons at a time, shall be known as a wholesale liquor dealer. Each retail liquor dealer shall pay for a license hereunder, the sum of one thousand dollars, payable annually in advance. Each wholesale dealer shall pay for his license the sum of three hundred dollars, payable annually in advance. A re-

tail license granted under the provisions hereof shall also authorize a person to sell by wholesale. No person or persons within the state, directly or indirectly, in person or by agent or employee, shall vend, sell, barter or dispose of for any pecuniary advantage, any spirituous, malt, fermented or intoxicating liquors or wine without first obtaining a license therefor as provided in this chapter. Every person who shall violate any provisions of this section shall be fined in the sum of one hundred and fifty dollars, together with the costs of suit, for each and every offense, and shall be confined in the county jail until such fine is paid, or until otherwise discharged according to law. In case of any violation hereof by any corporation, every officer, agent or employee making, or in any way countenancing or conniving at any sale or sales in violation hereof shall be deemed and held a person making such sale or sales liable to the pains and penalties herein imposed." (Section 2832, Comp. Stats. 1910.)

The main contentions of counsel for plaintiff in error are: (1) that the transaction did not constitute a sale; and (2) that, if it be held to have been a sale, the Elks Lodge was not a retail liquor dealer and was not engaged in business as a retail dealer, and was not therefore required to procure a license. There is some conflict in the decided cases as to whether or not such transaction constitutes a sale. The cases holding that it does not, generally put it on the ground that it is an equitable distribution of property among the owners in common of the property; but that doctrine has no application to the case at bar. Here the lodge, a corporation—a distinct legal entity having power and authority to own, control and sell property— was the absolute and unqualified owner of the property and had it in its possession. It parted with its title, possession and right to possession to another for a valuable consideration. Not a single element of a valid sale is wanting in the transaction. That the transaction constituted a sale is supported by abundant authority, and we deem it necessary to cite only a few of the many cases so holding. (Martin's

case, 59 Ala. 34; Beauvoir Club v. State, 148 Ala. 643, 42 So. 1040, 121 Am. St. Rep. 82; The Manassas Club v. The City of Mobile, 121 Ala. 561, 25 So. 628; Manning v. Canon City, 45 Colo. 571, 101 Pac. 978, 23 L. R. A. N. S. 192; Lloyd v. Canon City, 46 Colo. 195, 103 Pac. 288; Canon City Labor Club v. People, 21 Colo. App. 37, 121 Pac. 120; Ada County v. Boise Commercial Club, 20 Idaho, 421, 118 Pac. 1086, 38 L. R. A. N. S. 101; People v. Law & Order Club, 203 Ill. 127, 67 N. E. 855, 62 L. R. A. 884; South Shore Club v. The People, 228 Ill. 75, 81 N. E. 805, 12 L. R. A. N. S. 519, 119 A. S. Rep. 417, 10 Ann. Cas. 383; State v Shumate, 44 W. Va. 490, 29 S. E. 1001; Army & Navy Club v. Dist. of Columbia, 8 App. D. C. 544; People v. Soule, 74 Mich. 250, 2 L. R. A. 494, 41 N. W. 908; State v. Minnesota Club, 106 Minn. 515, 20 L. R. A. N. S. 1101, 119 N. W. 494.) Many more decisions holding such transactions by clubs to be a sale are to be found in the reports. We can see no good reason for holding that a transaction by an incorporated social club, which if it had to do with other property owned by it would unquestionably be held to be a sale, should not likewise be held to be a sale when the subject is intoxicating liquors. The case of Russell v. State, 19 Wyo. 270, 116 Pac. 451, is cited by counsel for plaintiff in error as decisive of this case. But the question here presented was not in that case. The trial court in that case submitted to the jury the question of the purpose for which the club was formed, and the jury found against the defendant, and all that this court said was that the instruction was as favorable to defendant as he could ask. But on the question now being presented we hold that the instruction in the Russell case was *more* favorable to the defendant than he was entitled to.

The next question to be determined is whether the Elks Lodge was a retail liquor dealer within the meaning of the statute. On that question the authorities are also conflicting, and in the cases holding such clubs are not required to pay a license the decisions have been based largely on the particular language of the statute or ordinance. The statute,

for the violation of which the plaintiff in error was convicted, in clear and unambiguous language declares who shall be known as a "retail liquor dealer" and includes "every person who shall sell," etc. No exceptions whatever are to be found in the definition placed on the term by the Legislature. The Legislature having thus clearly defined who "shall be known as a retail liquor dealer," that definition must be accepted by the courts and they are not at liberty to give to the term a different meaning as they might be called upon to do had the term not been defined in the statute. Under the United States statute which reads: "Every person who sells, or offers for sale, malt liquors, in less quantities than five gallons at one time, but who does not deal in spirituous liquors, shall be regarded as a retail dealer in malt liquors," the federal courts have held that such clubs or organizations as the lodge in this case are retail dealers as defined by that statute and are required to pay a revenue tax. (United States v. Gilder, 54 Fed. 656; United States v. Wittig, 28 Fed. Cases, 744, case number 16748; United States v. Alexis Club, 98 Fed. 725.) A number of the cases cited in the former paragraph of this opinion also apply to the point now being considered. In addition to those we also refer to City of Spokane v. Baughman, 54 Wash. 315, 103 Pac. 14; Mohrman v. State, 105 Ga. 709, 32 S. E. 143, 43 L. R. A. 398, 70 Am. St. Rep. 74; Marmont v. State, 48 Ind. 21; State v. Boston Club, 45 La. Ann. 585, 20 L. R. A. 185, 12 So. 895; Kentucky Club v. City of Louisville, 92 Ky. 309, 17 S. W. 743; Newark v. Essex Club, 53 N. J. L. 99, 20 Atl. 769; State v. Lockyear, 95 N. C. 633, 59 A. Rep. 287. We have not attempted a review of the decisions. To do so would fill a volume. We are, however, convinced that the better reasoning and weight of authority sustains our conclusions. We do not think that it can be fairly deduced from the plain language of the statute that the Legislature intended to exempt from the operation of the statute every bona fide fraternal society, social or other club, or union in the state which might see fit to establish a "buffet" in its meeting place and to sell to

its members intoxicating liquors without restriction and without contributing to the revenues of the city or state.

It is suggested that our construction of the statute would require every one who serves a guest with wine at dinner in one's own home would be required to have a license or be subject to a fine, and that such was not the intention of the Legislature. But the statute does not so provide. That is criminal only which the statute declares to be so, and it does not prescribe any penalty for the giving away of liquor. The language is: "No person or persons within this state, directly or indirectly, in person or by agent or employee shall vend, sell, barter or dispose of for any pecuniary advantage, any spirituous, malt, fermented or intoxicating liquors or wine without first obtaining a license therefor as provided in this chapter." Thus it will be seen that the giving away of liquor without consideration is not made a crime, nor is any penalty prescribed for so doing.

The court sustained an objection to the following question: "What is the fact, Judge Matson, does a member lose his particular property right in the whisky by having it distributed to him by the drink?" The ruling is assigned as error. The ruling was clearly right. The question called for the conclusion of the witness on a question of law.

Two instructions given to the jury are complained of. The first correctly stated the substance of the statute under which the prosecution was had; and by the other the jury was told that if it found from the evidence beyond a reasonable doubt that defendant had violated the provisions of the statute he should be found to be guilty; otherwise he should be acquitted. The instructions were applicable to the issues and evidence in the case and contained nothing of which the defendant could rightfully complain.

The court refused to instruct the jury, as requested by the defendant, to the effect that the distribution of intoxicating liquors to members of bona fide clubs, such as the Elks Lodge in this case is admitted to be, does not constitute a sale within the meaning of the statute, and that such clubs are not required to pay a license. We have already

in the former part of this opinion held otherwise, and nothing further need be said on that subject. As we construe the statute those instructions were properly refused.

Upon the facts in the case as they are conceded to be, and the law as we understand it, the defendant below, Frank Sprekelsen, was rightfully and legally convicted, and no error being made to appear by the record, the judgment of the district court is affirmed.        *Affirmed.*

Scott, J., concurs.

Potter, C. J., dissents.

Scott, Justice (concurring).

I concur in the opinion of Mr. Justice Beard. I do not think the history of the legislation as to retail liquor licenses, the amendments and re-enactments of the original act at various times whereby Section 2832 has been molded into its present wording sheds any light on the meaning of that section. That section speaks for itself. Its meaning is not obscure. The legislative intent is apparent and had it been intended by the Legislature to exempt clubs such as the one in question, from the payment of a license in order to lawfully sell liquor to its members, it seems that the more reasonable view is that it would have said so. Its failure in that respect does not appeal to me as creating an exemption for the requirement of a license. There is no exception in the section, which is the latest legislative expression on the subject, from those "who shall sell * * * * liquor to be drunk upon the premises," but one who does so is designated as a "retail liquor dealer" and must pay a license. It seems to me that there is no reason for doubt as to the meaning of this language. The different amendments of the law and its resulting development and which amendments of the law as originally enacted and pointed out in the dissenting opinion may have been intended to prevent evasions of the law as it existed at the time of the amendment and in my opinion should be limited to that construction.

POTTER, CHIEF JUSTICE (dissenting).

I am unable to agree with the conclusion announced in this case. In explaining the reasons for my dissent, which I think I ought to do in a case so important as a precedent, it will be necessary to refer to several statutory provisions not mentioned in the prevailing opinion, which, to my mind, materially affect the construction of Section 2832, particularly that part declaring who shall be known as a retail liquor dealer, and also to trace the history of that section, together with other associated provisions of the statute. These provisions, considered in the light of the history of the legislation on the subject, clearly disclose, it seems to me, the true meaning of the provision prescribing what shall constitute a retail liquor dealer—the legislative purpose and intent in so prescribing, and that it was not intended to include such a transaction as that here complained of. While admitting that there is reason and authority to sustain the view to which I find my judgment opposed, I am convinced that the contrary view is more in accord with the purpose and intent of our statute, and therefore supported by the stronger reasoning.

It may be conceded that the transaction upon which the charge was laid was a "sale," according to the technical legal definition of that term. In conceding that much I attach no importance to the fact that the association by whom the plaintiff in error was employed is or was incorporated, for it was so incorporated without capital stock, and, respecting the question here involved, the relation between the association and its members does not appear to have been or to be different from such relation in the case of a similar but unincorporated association. In either case there is no transferable membership, and the organization is principally maintained by the payment of membership fees and dues and possible assessments; and its incorporation, so far as the pending question is concerned, is to be regarded merely as adopted for the convenient handling of the association's property and affairs. But whether the transaction was or was not a sale, as that term is legally defined and under-

stood, is not the real question in the case, nor does the fact that, technically, it may have been a sale appeal to me as alone of paramount importance in determining the real question, viz.: Whether a bona fide social club, when dispensing liquors to its members in the manner described in this case, not as one of the objects of the organization, but merely incidental thereto, is a retail liquor dealer, within the meaning of the license laws. I am aware that many of the decided cases holding the transaction to be a sale under license laws seem to be based upon the strict legal meaning of the term. Some of those cases are not in point here, for, like the Colorado cases cited in the majority opinion, they were decided under local option laws and involved an act occurring in prohibition territory. It is evident that the term must be more strictly construed, in the sense of more inclusive, where no license is grantable and every act of selling or giving away intoxicating liquor is illegal.

However, there is much respectable authority sustaining the view that the distribution of liquors by a bona fide social club to its members, in the usual manner in which that is done in such clubs, and in a manner like that shown in this case, is not a "sale" within the meaning of a statute prohibiting sales or keeping a place for the sale of intoxicating liquor without a license. (Klein v. Livingston Club, 177 Pa. St. 224, 35 Atl. 606, 34 L. R. A. 94, 55 Am. St. Rep. 717; State v. St. Louis Club, 125 Mo. 308, 28 S. W. 26, 25 L. R. A. 573; People v. Adelphi Club, 149 N. Y. 5, 43 N. E. 410, 31 L. R. A. 510, 52 Am. St. Rep. 700; Comm. v. Pomphret, 137 Mass. 564, 50 Am. Rep. 340.) I have not attempted a citation of all the cases taking this view of the matter, deeming those cited sufficient to show the line of reasoning upon which the decisions maintaining that view are based.

In Klein v. Livingston Club, *supra,* the defendant being an incorporated club, the court referred to the absence of any special provision in the statute with reference to the use of liquor in clubs and said: "There is, in fact, no express legislation concerning this distinctive, open, notorious, long-

existing use of liquor; the plain implication is that the consumption of liquor in clubs, as known to the Legislature, was not deemed a sale. The general words of the law, however, make the sale of liquor without license illegal everywhere in the commonwealth; and whether this be a sale is now a judicial and not a legislative question . * * * The club buys the liquors and distributes them to the members; those who drink them pay in proportion to the quantity drank; the money for the purchase of the liquor in quantities from the liquor dealer comes out of the treasury of the club; nothing in the shape of food or drink is distributed equally to the members; there is an equal distribution of light and heat; members have like access to the reading rooms and library, but when it comes to food and drink, each contributes to the common fund in proportion as he consumes. * * * * The purpose of the whole system is to distribute the advantages, comforts and luxuries of the club among the members, so that there shall not be unequal contributions to the treasury which purchases them. They are all owners of the property when purchased, in equal shares; and if a division were then made, each would be entitled to an equal share of the liquor; but one consumes his share and that of others who do not drink liquor, and he puts back into the common treasury the value of the others' shares; therefore, although by consumption the division is not equal, yet it is made equal by the contribution to the treasury; that has neither lost nor gained, consequently the distribution is equitable. Does this constitute a sale? We think not; there is no element of bargain, only a method of distribution of the common property."

In the New York case of People v. Adelphi Club, the court said: "The defendant is a social club organized under the statute for a legitimate purpose, to which the furnishing of liquors to its members is merely incidental and is not unlike the supplying of dinners or articles which the member may desire for his own comfort and entertainment. The defendant has a limited and selected member-

ship.  And whilst the property and supplies are technically owned by the club, each member is in equity an equal owner in common.  It was not organized for the purpose of engaging in a business for profit, or for the traffic in liquors.  It engages in no business other than that which pertains to the maintenance of its library, reading rooms and the social intercourse and comfort of its members. Liquors, as well as other supplies, are distributed to its members upon the written order of the member at a price fixed by the officers of the club designed to cover the purchase price and disbursements in serving.  These orders pass to the steward or treasurer of the club and are charged against the member, who settles therefor monthly.  We think the transaction with Stark did not amount to a sale within the meaning of the statute.  It was but a distribution among the members of the club of the property that belonged to them.  The fact that a payment was made does not change the character of the act, for it was but the means adopted by which each member could receive his own and not that belonging to his fellow-member.  The payment went into the treasury to ultimately restore that which he had taken."  In this case also the defendant was an incorporated club.

It may be true that the weight of authority, in view of the number of decisions, is that such transaction is a sale under the license laws, where there is nothing more in the statute to show the intent than provisions ·for granting a license to sell and prohibiting any sale without a license. Where, however, the statute discloses the purpose to license the business of dealing in or disposing of liquors, or the engaging in such business, then, by the clear weight of authority, a provision prohibiting a sale without a license is. held not to apply to a bona fide social club in distributing or furnishing liquors to its members and guests in the manner above mentioned, on the ground that such a club is not engaged in or conducting a business within the meaning of the statute.  (State v. University Club, 35 Nev. 475, 130 Pac. 468, 44 L. R. A. (N. S.) 1026; Cuzner v. Cali-

fornia Club, 155 Cal. 303, 100 Pac. 868, 20 L. R. A. (N. S.) 1095; State v. Austin Club, 89 Tex. 20, 33 S. W. 113, 30 L. R. A. 500; Piedmont Club v. Comm., 87 Va. 540, 12 S. E. 963; Barden v. Montana Club, 10 Mont. 330, 25 Pac. 1042, 11 L. R. A. 593; Manassas Club v. Mobile, 121 Ala. 561, 25 So. 628; Tennessee Club v. Dwyer, 47 Am. Rep. 298, 11 Lea, 452; State v. New Orleans Club, 116 La. 46, 40 So. 526, 7 Ann. Cas. 957; State v. Duke, 104 Tex. 355, 137 S. W. 654, 138 S. W. 385.) The statute referred to in the Nevada case cited provided that every person, etc., manufacturing or selling spirituous, malt or vinous liquors, either at retail or wholesale, shall procure a state liquor license; that the sheriffs of the respective counties shall be the collectors of, and authorized and required to issue, state licenses, and upon the payment of the license fee shall issue the license to any person, company or corporation engaged in selling such liquors in quantities less than five gallons, and that "any person or persons who may dispose of any spirituous, malt or fermented liquors or wines, in less quantities than one quart, shall, before the transaction of any such business, take out a license from the sheriff of the county in which he or she proposes to do such business, and pay therefor the sum of ten dollars per month * * * *." Construing the statute, it was held to impose a license on persons "engaged in the business of selling liquors," and that under such a statute, by the universal holding of the courts, bona fide social clubs are not liable to take out the license, for the reason that they are not engaged in the business, within the meaning of the statute.

It is contended in this case that the statute does not use the word "business" and therefore does not provide for a license for conducting or engaging in the business of selling liquors, and the cases cited and other cases of like effect are not in point. It will be my endeavor to show that this contention is not sustained by the provisions of our statute, but that, on the contrary, the statute very clearly provides for a license for the business of selling liquors, and that a

retail liquor dealer and a wholesale liquor dealer are defined in Section 2832 principally, if not solely, for the purpose of distinguishing between the two classes of dealers, as a basis for determining the amount to be paid for the license; a much larger fee being required of a retail than of a wholesale liquor dealer.

Section 2832 aforesaid, in its present form, is the result of amendments from time to time of certain provisions formerly contained in two sections of the statute relating to liquor licenses, or rather the consolidation of the two sections referred to in one by an amendment of one of the sections and a repeal of the other; the provisions of the one repealed being substantially incorporated in the amendatory section.  Originally, the provisions finally incorporated by amendment in Section 2832, some of them having remained without change for many years, were not contained in a separate chapter covering alone the matter of liquor licenses as is now the case in the Compiled Statutes, and they were never so separated until the revision of the statutes in 1899, which separation at that time was not, nor at any time since has it been, the act of the Legislature, but it was made by the revisers, evidently for convenience of arrangement; the general provisions being placed in one chapter, those relating to liquor licenses in another, and the remaining provisions covering licenses for other occupations in a third chapter.  But it cannot be taken as having in any manner changed the relation of the various provisions of the statute previously associated in one act or chapter, so far as the matter of construction is concerned, a point frequently decided by this court.  There has been remarkably little change in the license law since its original enactment in 1869.  The important or material changes have been with reference to the amount of the license fee and the public agency to collect and the appropriation of the money, and a recent provision prohibiting the granting of a license for the sale of liquors outside of incorporated cities and towns.

The original act was passed December 9, 1869, under the title, "An Act Concerning County Licenses." The act included provisions for licensing auctioneers, peddlers, pawnbrokers, theaters and other exhibitions, the keeping of an intelligence office, the keeping of billiard tables or bowling alleys, and the selling of liquors. It will be referred to as embraced in the Compiled Laws of 1876, for the amendments made prior to that year were not material or important to the consideration of the question under discussion. The first section of the act declared it to be the duty of the sheriff to furnish all licenses, and collect all moneys for the same, as provided in the act, and that if he "shall knowingly permit any person subject to such license to conduct or carry on any *branch of business, occupation or pursuit,* without first obtaining such license, such sheriff shall be guilty of a misdemeanor," etc. Section 2 required the licenses to be prepared by the county clerk and delivered to the sheriff, and provided that, "each license shall contain the name of the person and *the character and place of business* to be conducted under such license, * * * *."

Section 5 provided that all moneys collected for licenses shall constitute a portion of, and be credited to, the general county fund. Section 6 made it unlawful for any auctioneer, peddler, or other person to sell any goods without first having obtained a license; and Section 7 prescribed the penalty therefor.

The first of the provisions of the act referring to the sale of liquors was contained in Section 9, which section, quoting from Compiled Laws 1876, Ch. 76, page 454, was as follows:

"No person or persons in any county of this Territory shall be permitted to vend, sell, barter or dispose of, for pecuniary benefit or advantage, either directly or indirectly, in person or by agent or employe, any spirituous, malt or fermented liquors or wines, in less quantities than one quart, without first obtaining a license or permit therefor, as provided for in this act; and any person or persons found dealing in liquors, as aforesaid, without having first obtained a

license therefor, shall forfeit and pay the sum double the amount of such license for three months, for each and every offense, together with costs of suit. One-half of said fine shall be paid by the court receiving such fine, to the person giving the information, the remaining half to be paid into the county treasury, and shall be credited to the general county fund; Provided, further, That all persons engaged in selling liquors by the barrel, case, or in the original package, and not in quantities of less than one quart, shall pay an annual county license therefor of forty dollars." The next succeeding section (Sec. 10) was as follows:

"License granted for retailing liquors, as provided in this act, shall not authorize the persons obtaining the license to vend, sell, barter or dispose of such liquors, in more than one place or house, and such place and house shall be fully described in such license; Provided, That the licensee shall be entitled to retail liquors in two or more places by paying a license for each place *where such business is conducted.*"

The only other provision of the act with reference to liquor licenses at all material here was contained in Section 21, which section then read as follows:

"Any person or persons selling liquors, as provided in Section 9 of this act, shall pay an annual license of one hundred dollars for such privilege; which shall be payable quarter yearly; Provided, That all persons *engaged* in retailing liquors as aforesaid, in connection with hotel or eating accommodations and entertainment for travelers, at any point distant ten miles or more from the limits or boundaries of any city, town, village or railway station, within this Territory, shall not be required to pay an annual license of more than fifty dollars."

The provisions above quoted appear to me to clearly show that the law was one imposing a license tax upon certain occupations or for the privilege of conducting or carrying on a business. Sections 1 and 2 have remained in force as a part of the license law without amendment or change. (Rev. Stat. 1887, Secs. 1433, 1434; Rev. Stat. 1899, Secs. 2151, 2152; Comp. Stat. 1910, Secs. 2821, 2822.)

To disregard these sections in construing Sections 9 and 21 would be unwarranted. But Section 9, in prescribing the penalty for unlawfully selling liquors without a license imposed such penalty upon any person or persons "found *dealing* in liquors as aforesaid," and in prescribing the license fee for wholesale dealers defined such dealers as "all persons *engaged in selling liquors*," etc. The following section, in authorizing the retailing of liquors in two or more places, declared that such permission might be obtained by paying a license for each place *"where such business is conducted."* Again, the provision of Section 21 prescribing the amount of the license for retailers fixed a special license charge for persons *"engaged* in retailing liquors at a point ten miles or more from the limits of any city, town or railway station." Thus each section disclosed the purpose or intent to require the license from one "engaged" in the business of selling liquors at retail.

Prior to the revision of the statutes in 1887 Section 9 of said act had been amended, without otherwise changing the language of the section, so as to require a retail license for selling in less quantities than five gallons, and permitting a wholesale license for selling by the barrel, case, or original package, in quantities not less than five gallons, on payment of $175 annually, and providing that it should not be construed to apply to the sale of ale and beer manufactured in the Territory and sold at the place of manufacture in quantities of one keg and upwards. Prior thereto, also, Section 21 was amended only so far as to fix the retail license at $300 per annum, where formerly it was $100, and $100 per annum where formerly it was $50. In other respects the two sections remained the same, containing the language above alluded to as indicating the purpose of the legislation to be to license the "business" of selling intoxicating liquors. (Rev. Stat. 1887, Secs. 1442, 1453.) Section 10 of the act remained in force without amendment. (Id., Sec. 1443.) Prior to that revision also an act was passed providing that all licenses issued by Laramie County for the sale of liquors, "when the licensee shall be a resident of, and *carrying on*

*the business for which he is licensed,"* within the limits of
any incorporated town, city, or village, the license shall be
collected by the city marshal or collecting officer of such
town, city or village, in addition to licenses issued for such
purpose by the municipal corporation, and providing that
the moneys collected for such licenses shall be applied to
the general revenue purposes of such municipal corpora-
tion.  (Laws 1884, Ch. 55, Sec. 1; Rev. Stat. 1887, Sec.
1438.)  In 1888 this section was amended so as to apply
its provisions to liquor licenses issued by *any* county, when
the licensee shall be a resident of and "carrying on the busi-
ness for which he is licensed" within the limits of any in-
corporated town, city, or village.  (Laws 1888, Ch. 44, Sec.
1; Rev. Stat. 1899, Sec. 2156.)  That section, as so amend-
ed, has continued in force as a part of the license law. ˙(R.
S. 1899, Sec. 2156; Comp. Stat. 1910, Sec. 2826.)  In 1886,
the same provisions were embraced in the act of that year
incorporating the city of Rawlins, in Carbon County; the
section containing the language, "when the licensee shall be
a resident of and carrying on the business for which he is
licensed within the corporate limits of the city of Rawlins."
(Laws 1886, Ch. 116, Sec. 21; Rev. Stat. 1887, Sec. 431;
Rev. Stat. 1899, Sec. 1508; Comp. Stat. 1910, Sec. 1538.)

By an act of January 5, 1891, Section 1435, Revised Stat-
utes of 1887, aforesaid, was repealed, and Section 1442
amended so as to include the amount of the license to be
charged for selling at retail, and making certain other
changes not material here; but to clearly show the changes
in the section as the result of combining the two sections
it will be here quoted:

"Section 1442.  No person or persons in any county shall
be permitted to vend, sell or barter, or dispose of for pe-
cuniary benefit or advantage, either directly or indirectly,
in person or by agent, or employee, any spirituous, malt or
fermented liquors, or wines by the case, or in less quantities
than five gallons, without first obtaining a license or permit
therefor as follows:  In all cases where such license per-
mits the selling at or within five miles of any railway sta-

tion, or within five miles of a town, city or village, whether incorporated or not, located on any railroad, or at any other place within five miles of any railroad, there shall be paid therefor the sum of three hundred dollars, payable annually in advance. Provided, That all persons or parties engaged in selling such liquors by retail, in any case, not provided for by this section; shall pay an annual license of one hundred dollars per annum, payable annually in advance. All persons selling liquors in less quantities than by the case, or five gallons, as aforesaid, shall be known as retail liquor dealers, and any person or persons found dealing in liquors as aforesaid without first having paid a license, shall forfeit and pay the sum of one hundred and fifty dollars for each and every offense, together with costs of suit; one-half of said fine shall be paid by the court receiving such fine to the person giving the information, the remaining half to be paid into the county treasury, and shall be credited to the general county fund. Provided, That all persons engaged in the selling of liquor by the barrel, case, or in the original package, shall be known as wholesale dealers, and shall pay an annual county license therefor of one hundred and seventy-five dollars; Provided, further, That all persons who are both retail and wholesale dealers shall pay a license as a retail dealer. and a license as a wholesale dealer." (Laws 1890-91, Ch. 23. Sec. 1.)

It will be noticed that the section, as then amended, referred in two places to persons "engaged" in selling, meaning thereby, as I understand it, engaged in the business of selling. and which explains the intent of the provision stating who shall be known as retail liquor dealers. It does not differ in effect as to that matter from the previous legislation, and was, moreover, to be construed in connection with the provisions of the other sections of the act or chapter specially providing for licensing a "business." In 1897 an act was passed with the following title: "An Act defining the meaning of 'retail liquor dealer' as used in section one of chapter twenty-three of the Session Laws of 1890-91 of the State of Wyoming, and prescribing the penalty for

failure to comply with the law." The provisions of that act were as follows:

"All persons, partnerships, companies, or corporations doing business in the State of Wyoming, who shall carry as a part of a general stock of merchandise any fermented or alcoholic, or vinous liquors and who shall sell or give away any such liquor by the glass to be drank on the premises, or who shall give away or sell any such liquor by the bottle; shall be deemed retail liquor dealers within the meaning of section one of chapter twenty-three of the Session Laws of the year 1890-91 of the State of Wyoming, and shall be subject to all the penalties of the law in case of failure to comply with the requirements of said law." (Laws 1897, Ch. 49.)

This act is significant as indicating the legislative understanding that, without a special provision to that effect, the condition described was not or would not be covered by the license law, or, at least, that it was doubtful; and clearly the act was intended to enlarge upon the scope of the statutory definition of a retail liquor dealer. The provisions of the act were incorporated in the Revised Statutes of 1899 as part of Section 1 of the Act of 1891 (2162). Then, in 1901, that section of the Revised Statutes was amended and re-enacted, without changing the amount of the license charges, except that the provision for a smaller charge for a license issued for a place not located within five miles of a railroad, town, city or village was omitted, and instead thereof a provision inserted prohibiting the granting of any license for a place within five miles of any railroad grade in the course of construction, or on which track is being laid, or within five miles of any ditch, reservoir or public work in course of construction upon which twenty-five men or more are employed, except where such place was in an incorporated city or town. And another provision was added declaring that the officer, agent or employe of any corporation making, or in any way countenancing or conniving at any sale or sales shall be deemed the person making the sale or

sales and liable to the penalties imposed, if in violation of the section. (Laws 1901, Ch. 43, Sec. 1.) That act also amended and re-enacted Section 2163, so as to require written applications for liquor licenses and a hearing thereon before granting the same, but containing a proviso authorizing the county board to refuse a license for any place outside of incorporated cities and towns. (Id., Sec. 2.) By Section 1 of that act the location of some of the provisions of the section as amended were changed; the definition of liquor dealers being placed at the beginning of the section. But such change did not, in my opinion, alter the meaning or effect of the statute with respect to the question now under consideration. Nor does the fact that the special provisions of the act of 1897 aforesaid were omitted from the section as amended and re-enacted demonstrate to my mind any change in the legislative intent as to the liquor license law to regulate and control the business of selling liquors— in other words, what is popularly known as the saloon business. It is just as reasonable to assume that the omission of the provisions of the act of 1897 was for the purpose of excluding the acts therein described from the provisions of the license law, and particularly the definition of a retail liquor dealer, as it would be to assume the contrary; and even more reasonable, it seems to me, for if it was intended to make the definition aforesaid or the other provisions more inclusive it might easily have been done, and I think would have been done, by apt words expressing such intent. The same section was again amended and re-enacted in 1909 in the form in which it is now found in Section 2832, Compiled Statutes 1910, which section is quoted in the majority opinion. The principal object of this amendment seems to have been to increase the license charges; the annual charge for a retail license being raised to one thousand dollars and for a wholesale license to three hundred dollars. But there was also omitted from the section as amended any reference to a license for a place outside of incorporated cities or towns; Section 2163, R. S. 1899, having been amended at

the same session so as to prohibit the issuance of a license
for the selling of liquors at any such place. (Laws 1909,
Ch. 73, Sec. 1; Ch. 7, Sec. 1; Comp. Stat. 1910, Secs. 2832,
2833.) Finally an act was passed in 1911 which quite
plainly shows that the Legislature understood that liquor
licenses were issued for the purpose of permitting the con-
ducting or carrying on of a "business." The act was ap-
proved February 13, 1911, and was published as Chapter 13
of the laws of that year. Section 1 contains all the material
provisions and reads as follows:

"That in all cases where a retail liquor license has been
duly and legally issued and the license money fully paid
into the treasury of any city or town of this state, and the
said owner of such license having sold in good faith to a
purchaser such saloon business, and a new license issued by
any county, city or town for the carrying on and continu-
ance of such saloon business, then and in that case, the au-
thorities of such city or town shall credit upon such new
license the unused portion of the license so belonging to the
vender of such saloon business, and the purchaser of such
business shall pay into the treasury of such city or town
the remaining portion of such new license, and no license
money paid to any city or town for any liquor license shall
be refunded to any licensee."

There can be no doubt that this statute was enacted to
apply, as stated, "in all cases" where a retail liquor license
has been duly and legally issued and the other conditions
mentioned have occurred. There could hardly be a stronger
indication of what the Legislature understood to be the
meaning and effect of the statute relating to liquor licenses.
It seems to me that by this act of 1911 the Legislature has
so construed the statute as to require the most convincing
reasons to justify a contrary construction by the court.

Considering the various provisions referred to, it seems
to me futile to argue that the word "business" is not found
in our statute with reference to liquor licenses, or that the
numerous cases decided upon statutes licensing the business

of selling liquor, or the business of a liquor dealer, are not directly in point. Following the line of decisions, which I think constitute the weight of authority under statutes like ours, I am of the opinion that the judgment of the district court should be reversed, for the reason that the organization here involved was not a retail liquor dealer within the meaning and effect of the definition of such a dealer found in Section 2832, and that therefore the transaction complained of was not a violation of the provision imposing a penalty upon the selling of liquor without a license. By the same reasoning upon which it is concluded that because the transaction here involved was essentially a sale and therefore brought the organization within the definition of a retail liquor dealer found in Section 2832, it would follow that anyone is such a dealer who serves wines or any spirituous, malt, fermented or intoxicating liquor to his guests in his own home, or even to the members of his family, whatever the occasion, for the statute defines as such dealer not alone one who sells, but also one who gives away any of the beverages mentioned in less quantities than five gallons. Yet I do not suppose that anyone would contend for a construction of the statute which would have that effect. It is true that the penalty of the section is imposed only for selling, bartering or disposing of liquors for a pecuniary advantage, and therefore it may well be said that it was not intended to include the use of liquor by one in his own home or the serving of the same therein to family or guests. There is another section which seems to punish the giving away of the kind of liquors mentioned in the statute without first having obtained a license therefor. (Comp. Stat. 1910, Sec. 2838.) But I do not think it can be held even under that section that the law was intended to apply to the use or the serving of liquors in the home to the family or guests. But to so conclude requires a consideration of the purpose and intent of the statute, and the same consideration, in my opinion, futher limits the application of the definition of a retail liquor dealer so as not to include a bona fide social club as to transactions like the one involved in this case.

That definition should, I think, be confined to those engaged in the business of selling liquors. When so confined, then by the great weight of authority it could not be held to apply to bona fide social clubs under the conditions aforesaid.